Filed 12/10/15

# IN THE SUPREME COURT OF CALIFORNIA

THE PEOPLE,                                    )
                                                 )
          Plaintiff and Respondent,    )
                                                 )          S209643
         v.                               )
                                                 )    Ct.App. 2/6 B241356
MARK STEVENS,                  )
                                                 )    San Luis Obispo County
          Defendant and Appellant.    )    Super. Ct. No. F471357
_____)

The Mentally Disordered Offender Act (MDO Act) (Pen. Code, § 2960 et seq.)[1] authorizes proceedings for civil commitment of a state prisoner during parole if a chief psychiatrist of the Department of Corrections and Rehabilitation certifies to the Board of Parole Hearings (Board) that the prisoner has met the following statutory criteria:  (1) the prisoner has a severe mental disorder; (2) the disorder is not in remission, or cannot be kept in remission without treatment; (3) the disorder was one of the causes of or an aggravating factor in the commission of the offense; (4) the prisoner was treated for the disorder for at least 90 days in the year before being paroled; and (5) because of the severe mental disorder, the prisoner presents a substantial danger of physical harm to other people.  (§ 2962, subd. (d)(1); see *People v. Sheek*  (2004) 122 Cal.App.4th 1606, 1610 (*Sheek*).)  Additionally, civil commitment under the MDO Act requires that the underlying

---

[1]    All further statutory references are to the Penal Code unless otherwise stated.

qualifying offense involve one of the offenses specified in section 2962, subdivision (e)(2)(A) through (O) or be a felony involving behavior described in subdivision (e)(2)(P) or (Q). For our purposes, the criminal behavior that qualified defendant Mark Stevens (defendant) for MDO status involved a crime in which he allegedly "expressly or impliedly threatened another with the use of force or violence likely to produce substantial physical harm in such a manner that a reasonable person would believe and expect that the force or violence would be used." (§ 2962, subd. (e)(2)(Q).)

Defendant, who the People contend committed the crime of petty theft with a prior conviction (§ 666) with threats of force or violence, challenges his commitment under the MDO Act. He asserts that the mental health expert's testimony that defendant's offense involved the threat of force or violence likely to produce physical harm to others under section 2962, subdivision (e)(2)(Q) was inadmissible because the expert had no personal knowledge of the facts surrounding defendant's crime or disorder. Defendant adds that the expert erroneously testified about a topic that is not "sufficiently beyond common experience that the opinion of an expert would assist the trier of fact." (Evid. Code, § 801, subd. (a).)

We granted review to resolve the following question: Is a mental health expert's opinion testimony in support of a defendant's commitment under the MDO Act substantive independent proof that the defendant committed a qualifying offense for commitment? We conclude that a mental health expert's testimony in support of a defendant's MDO commitment may not be used to prove the defendant committed a qualifying offense involving one of the offenses specified in section 2962, subdivision (e)(2)(A) through (O) or involved behavior described in subdivision (e)(2)(P) or (Q). We also hold that mental health experts may not testify about a topic that is not "sufficiently beyond common experience

2

that the opinion of an expert would assist the trier of fact." (Evid. Code, § 801, subd. (a).) Because the prosecution failed to present evidence other than its mental health expert's opinion testimony and supporting foundational facts, and because that expert improperly opined on a topic (defendant's threat of force or violence) that is not beyond common experience, substantial evidence does not support the trial court's finding on the MDO commitment. For reasons explained below, we reverse the Court of Appeal judgment and remand the matter for further proceedings consistent with our holding.

FACTUAL AND PROCEDURAL BACKGROUND

1. *Facts*

In San Diego County Superior Court in 2009, defendant was convicted of petty theft with a prior theft-related conviction and was sentenced to 32 months in state prison. (§ 666.) Before defendant's release on parole, the Department of Corrections and Rehabilitation certified him as an MDO under section 2962, subdivision (d). On March 2, 2012, the Board found that defendant met the criteria for commitment as an MDO under section 2962, subdivisions (d)(1) and (e)(2)(Q) (crime involving express or implied threat of force or violence). As was his statutory right, defendant petitioned for a hearing in the San Luis Obispo Superior Court under section 2966, subdivision (b), to challenge the Board's determination. Defendant also waived a jury trial.

At defendant's bench trial, held on April 24, 2012, Dr. Kevin Perry, a clinical psychologist in the forensic services department at Atascadero State Hospital, testified that he had conducted a forensic evaluation of defendant. The parties stipulated that Dr. Perry, who had performed approximately 600 MDO evaluations, was qualified as an expert witness on MDO Act criteria. In the course of his evaluation, Dr. Perry reviewed defendant's Atascadero State Hospital medical records, his prior MDO evaluations, and the probation officer's report that

3

described the defendant's MDO Act qualifying offense. He also consulted with defendant's treating psychologist about defendant's "behaviors and his progress on the unit." Dr. Perry approached defendant for an interview, but defendant declined to be interviewed.

Based on the information he obtained while evaluating defendant, Dr. Perry testified he had reached the opinion that, as of March 22, 2012, defendant "suffered from a severe mental disorder," namely, "schizophrenia, undifferentiated type." Dr. Perry also testified that defendant's severe mental disorder "was at least an aggravating factor" in the commission of his criminal act. When the prosecutor asked Dr. Perry to describe the facts of the crime, defendant objected on the grounds that "[t]his calls for hearsay. Not subject to opinion." With no ruling on the objection from the trial court, the prosecutor withdrew the question. He then asked Dr. Perry on what he based his opinion "that [defendant's] severe mental disorder was an aggravating factor in the commission of the crime." Defendant did not object to that question.

Dr. Perry testified that he relied on defendant's probation officer's report, which described the circumstances of the 2009 commitment offense as follows: "[Defendant] was observed placing items at a drug store into his waistband and pockets and then walking out of the store without paying. When loss prevention officers then confronted him about that, [defendant] threatened to assault and to kill the loss prevention agents. [¶] He, also, tried to push a shopping cart into one of them. [Defendant] had only about $27 worth of merchandise." Dr. Perry also stated that defendant received 90 days or more of treatment for his disorder in the year before his scheduled release on December 20, 2011, because he was in the prison mental health services delivery system for the entire year. Dr. Perry noted that "[defendant] has a history of aggressive and threatening behaviors during periods of psychiatric instability." Dr. Perry relied, in part, on the circumstances

4

of the theft offense, noting that "to threaten someone's life and attempt to assault them over such minor items, to me suggest[s] an irrational thought process."

The prosecutor asked Dr. Perry to explain why, in his opinion, defendant's crime of petty theft with a prior theft-related conviction satisfied the MDO Act's requirement that defendant's crime involve violence or threats of force or violence likely to produce substantial physical harm, "even though petty theft with a prior is not a crime by definition that involves force or violence that will cause serious bodily injury." Defense counsel objected on hearsay and foundational grounds, and the trial court sustained the objection, noting that "I have testimony as to what he has told us." The prosecutor admitted no documents except a rap sheet regarding the commitment offense.

In his summation at the close of evidence, defense counsel argued that the prosecutor presented insufficient evidence of defendant's MDO qualifications for two reasons. First, defendant's crime of petty theft with a prior was not one of the offenses enumerated in section 2962, subdivision (e). Second, apart from the hearsay evidence on which Dr. Perry relied, there was no evidence that defendant had threatened force or violence in the crime, as required under section 2962, subdivision (e)(2)(Q). When the trial court countered that defense counsel failed to object to Dr. Perry's testimony on that point, counsel explained that he did not object because he believed the testimony was admitted only as foundation for Dr. Perry's opinion that defendant's severe mental disorder caused or was an aggravating factor in his committing the offense. The prosecutor stated that because "the testimony came in without objection," it amounted to substantial evidence to support the MDO finding.

Petty theft with a prior is not inherently a crime of force or violence. But the trial court apparently concluded that because the offense involved "threats of great harm to others," defendant's threats and violent acts in committing that

5

offense came within the "force or violence" provision of the MDO Act. The court also ruled that defendant met the 90-day treatment requirement of section 2962, subdivision (c) because his severe mental disorder was not in remission as of March 2, 2012. Eventually, and for reasons that are not entirely clear on the record, the court concluded that defendant met all the necessary MDO Act criteria specified in section 2962. Defendant appealed.

2. *Court of Appeal Decision*

After concluding defendant had waived any objection to his MDO proceedings, the Court of Appeal affirmed defendant's commitment order. The court held that mental health experts may rely on hearsay reports or other reliable documents as substantive proof that a defendant committed a commitment offense under the MDO Act because the testimony is not offered for the truth of the facts stated, but rather as the basis for the mental health expert's opinion. (See, e.g., *People v. Cooper* (2007) 148 Cal.App.4th 731, 747 [experts may rely on and testify to sources on which opinions are based, including hearsay].) The Court of Appeal relied principally on *People v. Miller* (1994) 25 Cal.App.4th 913, 917-918 (*Miller*), which held that a psychiatrist's evaluation testimony may be based on a review of a defendant's probation report. The court opined that before *Miller*, prosecutors essentially "revictimized" crime victims by having them testify in defendants' MDO hearings about the acts committed against them. The court reasoned that *Miller*'s rule simply allows mental health experts to consult reliable documents and focus "on the prisoner's mental health and potential threat to the public."

Defendant urges us to reject *Miller* and rely on *People v. Baker* (2012) 204 Cal.App.4th 1234 (*Baker*), which criticized *Miller*. *Baker* held that although mental health experts may rely on hearsay to support their opinions regarding causation, the prosecution may not rely on expert opinion testimony as

6

independent proof of the facts surrounding the crime or to support a finding that the crime involved force or violence under the MDO Act. (*Baker, supra,* 204 Cal.App.4th at p. 1245, fn. 9.) In rejecting this argument, the Court of Appeal criticized *Baker*, in that it would require the People to produce eyewitness testimony on the nature of the MDO Act offense, and thus would subvert the very purpose of MDO Act procedures.

**DISCUSSION**

1. *The MDO Act*

"Enacted in 1985, the MDO Act requires that an offender who has been convicted of a specified felony related to a severe mental disorder and who continues to pose a danger to society receive appropriate treatment until the disorder can be kept in remission." (*People v. Harrison* (2013) 57 Cal.4th 1211, 1218 (*Harrison*) [adjudicating challenge to MDO Act procedure and noting that MDO Act's procedural requirements are distinct from statute's substantive criteria].) The MDO Act's purpose is to protect the public while treating severely mentally ill offenders. (*Harrison,* at p. 1218.) An initial commitment under the MDO Act occurs as a condition of parole, and is triggered by a certification by a chief psychiatrist of the Department of Corrections and Rehabilitation that the prisoner has a severe mental disorder that is not in remission, was sentenced to prison, has been in treatment for the disorder for 90 days or more within the year preceding release on parole, that the disorder was one of the causes of, or an aggravating factor in, defendant's criminal behavior, and represents a substantial danger of physical harm to others because of the disorder. (§ 2962, subd. (d)(1); see *Harrison, supra,* 57 Cal.4th at p. 1218.)

A prisoner may challenge the mental health professional's certification as follows: The prisoner can request a hearing before the Board pursuant to section 2966, subdivision (a); if the prisoner disagrees with the Board's determination that

7

he meets the MDO Act criteria, he may file a petition for a hearing in superior court to challenge that determination. (§ 2966, subd. (b).) Although the MDO statutes are placed in the Penal Code, the superior court hearing is civil in nature, and the rules of both civil and criminal discovery apply. (*Ibid.*; *People v. Cosgrove* (2002) 100 Cal.App.4th 1266, 1270-1273.) But once the defendant files a petition, the People have the burden of establishing to the trier of fact that the defendant qualifies for MDO status under section 2962's criteria beyond a reasonable doubt. (§ 2966, subd. (b); see *Sheek, supra,* 122 Cal.App.4th at p. 1611 [People failed to prove defendant was in treatment for 90 days within the year prior to his release].)

Defendant challenges the Court of Appeal's judgment, contending here that the trial court improperly relied on Dr. Perry's testimony about the content of the probation officer's report, medical records, and prior mental health evaluations to find defendant met two of the MDO Act's statutory criteria for commitment: the 90-day treatment requirement (§ 2962, subds. (c) & (d)(1)), and the requirement that his crime involved threats of force or violence (§ 2962, subd. (e)(2)(Q)). He reasons that Evidence Code section 801, subdivision (b), limits expert testimony to matters within the expert's special knowledge or skill and made known to him at or before the hearing. Consequently, defendant claims that the People may not rely on an expert's having read his probation or medical records to establish that he met the MDO's force or violence element he challenges here. (*Baker, supra,* 204 Cal.App.4th at p. 1245, fn. 9.) Defendant additionally relies on Evidence Code section 801, subdivision (a), which states that an expert may provide opinion testimony only when it is "[r]elated to a subject that is sufficiently beyond common experience that the opinion of an expert would assist the trier of fact." (See *Campbell v. General Motors Corp.* (1982) 32 Cal.3d 112, 124 [subject of expert opinion must be beyond common experience of ordinary persons].)

2. *Forfeiture*

Before deciding the issue on which we granted review, we address the People's claim that defendant's failure to object to Dr. Perry's hearsay testimony below resulted in forfeiture of his arguments. As the People observe, the failure to object to the admission of expert testimony or hearsay at trial forfeits an appellate claim that such evidence was improperly admitted. (Evid. Code, § 353, subd. (a); *People v. Eubanks* (2011) 53 Cal.4th 110, 142 [failure to object to hearsay in expert's testimony forfeits claim on appeal].)

The People correctly point out that defendant did not object to Dr. Perry's testimony, based on the records of defendant's treatment at Atascadero State Hospital, that defendant was in treatment for his mental disorder for 90 days, as required under section 2962, subdivisions (c) and (d)(1). Therefore, we agree with the People that defendant forfeited his challenge to Dr. Perry's testimony on that factor. As we explain, although defendant failed to object to Dr. Perry's testimony as to his prior 90-day treatment requirement, he did not forfeit his claim that Dr. Perry improperly testified about defendant's threats of force or violence in committing his crime.

Defendant did object, at least in part, to Dr. Perry's testimony about the facts of his petty theft offense with a prior conviction to prove his offense involved "force or violence." The prosecutor withdrew the question unanswered, and defendant did not ask for a ruling on his objection. Dr. Perry then stated that he based his opinion that defendant's severe mental disorder was an aggravating factor in his commission of the 2009 offense on two facts: "First, [defendant] had a preexisting psychotic disorder at the time of the offense that happened in November 2009 and the circumstances of that crime suggested to me that [defendant]'s symptoms were active. [¶] So [defendant] was observed placing items at a drug store into his waistband and pockets and then walking out of the

store without paying. When loss prevention officers then confronted him about that, [defendant] threatened to assault and to kill the loss prevention agents. [¶] He, also, tried to push a shopping cart into one of them. [Defendant] had only about $27 worth of merchandise. So to threaten someone's life and attempt to assault them over such minor items, to me suggest an irrational thought process. [¶] And, according to the probation officer's report, [defendant] also made a statement consistent with delusional ideation. He stated to the arresting officers that he watches the backs of the employees at the drug store. This is consistent with his history of delusions of being involved in public safety in some way." Dr. Perry then testified, again without objection, that he based his opinion that defendant "had a history of aggressive and threatening behaviors during periods of psychiatric instability" and was not in remission on "hospital progress notes that document active symptoms." Dr. Perry's testimony satisfied the trial court that defendant used threats of force or violence in committing the underlying offense. (§ 2962, subd. (e)(2)(Q).)

The trial court ruled that defendant forfeited his claim that Dr. Perry's testimony was based on inadmissible hearsay, and that the prosecutor presented no substantive independent proof that defendant used force or violence in committing the petty theft, because the testimony "about the commission of the crime came in without objection." The Court of Appeal agreed with the trial court regarding the forfeiture claim but went on to decide the issue on the merits. The record shows that both the trial court and the Court of Appeal erred in part on the forfeiture ruling.

A defendant "ordinarily cannot obtain appellate relief based upon grounds that the trial court might have addressed had the defendant availed himself or herself of the opportunity to bring them to that court's attention." (*People v. Fuiava* (2012) 53 Cal.4th 622, 655.) Generally, a timely objection is required for

10

reversal of a judgment on the merits on an alleged erroneous admission of the evidence. (Evid. Code, § 353, subd. (a).) In this case, defendant did object to the prosecutor's intent to rely on Dr. Perry's testimony covering the facts of the commitment offense contained in the probation report. Although defendant did not press for a ruling on his objection because the prosecutor withdrew the question, he later did object on hearsay and foundation grounds when the prosecutor attempted to ask a similar question on redirect examination. The trial court sustained that objection. Dr. Perry testified, however, without objection, that the probation report showed that defendant's mental disorder was one of the causes of, or an aggravating factor in, "the commission of the crime for which he was sentenced to prison." (See § 2962, subds. (b) & (d)(1).) The question Dr. Perry answered on direct examination was phrased, "On which do you base your opinion that Mr. Stevens' severe mental disorder was an aggravating factor in the commission of the crime?" This question did not ask Dr. Perry to testify as to the facts of the underlying crime, and the response lays a foundation only for Dr. Perry's opinion testimony under Evidence Code section 801, subdivision (b). Therefore, defendant properly objected when the prosecutor sought to introduce the facts in the probation report into evidence through Dr. Perry. Defendant is thus permitted here to raise the issue whether the trial court erred in relying on the mental health professional's testimony to conclude that his underlying crime involved the threat of force or violence.

3. *The* Miller *and* Baker *Rules*

As noted, the two cases at issue here that discuss the MDO Act present different interpretations of the act's requirements for proof that a defendant has met the act's criteria. The earlier of the two, *Miller, supra,* 25 Cal.App.4th at page 917, observed that even if a probation report constitutes inadmissible hearsay, Evidence Code section 801, subdivision (b), allows a mental health expert to refer

11

to it because the code allows an expert to rely on matters "made known to him at or before the hearing, whether or not admissible." The code does not require an expert to have personal knowledge on the subject of the testimony. *Miller* pointed out that "[i]n every felony proceeding in the State of California, a probation report is required and must be read and considered by the sentencing judge. (Pen. Code, § 1203, subds. (b), (g).) The Legislature does not require trial court judges to read and consider 'unreliable' documents as a prerequisite to the imposition of sentence. This report is prepared upon conviction, i.e., either by plea or trial." (*Miller, supra,* 25 Cal.App.4th at p. 918.) *Miller* concluded that although the probation report is hearsay, an expert may rely upon that report at MDO proceedings because it is reliable as a document prepared upon conviction. (*Ibid.* ["[T]he trial court must make a finding that there is a factual basis for a guilty plea. . . . [I]t is typical for the trial court to rely on the probation report to find a factual basis for the plea."].) Even though *Miller* acknowledged that prosecutors' cases would be stronger if they could provide a percipient witness to further establish the underlying violent offense, the *Miller* court did not *require* prosecutors to present one. (See *id.* at p. 919.)

In contrast, *Baker* would not permit an expert to opine on the nature of the commitment offense or to convey the content of hearsay documents in order to establish that requirement. *Baker* stated the general rule that a professional's " 'on-the-record recitation of sources relied on for an expert opinion does not transform inadmissible matter into "independent proof" of any fact.' " (*Baker*, *supra*, 204 Cal.App.4th at p. 1246.) Accordingly, *Baker* did not allow the licensed psychologist's expert testimony to be admitted as proof of the facts in the probation report. (*Baker, supra,* 204 Cal.App.4th at p. 1245, fn. 9 ["Although an expert opinion is required as to some criteria in order to determine whether the prisoner is an MDO, expert opinion is *not* necessary — or admissible — with

12

respect to the facts underlying the offense or whether the offense posed a risk of harm to others . . . ."].) The court further explained that "[a]n expert's opinion is admissible only with respect to a subject 'that is sufficiently beyond common experience that the opinion of an expert would assist the trier of fact.' (Evid. Code, § 801, subd. (a).) Whether the [defendant's commitment offense of] arson posed a substantial danger of physical harm to others is not a question [the expert] was competent to answer. To the extent that this is a factual question, it is not one requiring the opinion of an expert to assist the trier of fact. [(*Ibid.*)] To the extent that [the expert's] opinion was based on a legal conclusion, it is not substantial evidence. (*Downer v. Bramet* (1984) 152 Cal.App.3d 837, 841 [expert is not authorized to testify to legal conclusions in the guise of expert opinion].)" (*Baker, supra,* at pp. 1245-1246, fn. omitted.) Thus, *Baker* made it clear that although expert opinion testimony is required to determine some of the criteria in the MDO proceeding, it is not necessary, or even admissible, with respect to proving the underlying facts or elements of the offense to show that a defendant's crime qualified as an MDO Act commitment offense. (*Baker*, at p. 1245, fn. 9.)

It is true that an MDO hearing contemplates expert opinion testimony on other factors, including whether the defendant's severe mental disorder was one of the causes of or an aggravating factor in the commission of the crime. (§ 2962, subd. (b).) As to those factors, the expert may rely on hearsay documents that are "of a type that reasonably may be relied upon by an expert in forming an opinion upon the subject to which his testimony relates." (Evid. Code, § 801, subd. (b).) But proof of a qualifying conviction under the MDO Act is based on facts rather than on defendant's psychological condition, and thus does not call for a mental health expert's opinion testimony. We therefore disapprove *People v. Miller*, *supra*, 25 Cal.App.4th 913, because we conclude it is inconsistent with the MDO

13

Act and the rules of evidence regarding the proper scope of expert opinion testimony.

4. *Legislative History*

The People argue that recent legislative history of section 2962 supports *Miller*'s approach to the admissibility of hearsay reports in order to prove defendant's offense posed a substantial risk of harm to others because the Legislature has amended the statute and progressively enlarged the role of the mental health professional during the MDO hearing process. The People assert that this history indicates the Legislature intended the force or violence provision to include a mental health component. By contrast, defendant claims that the amendments do not support the People's contention. He asserts that had the Legislature intended to allow psychiatric experts to rely on a probation report or other hearsay documents to form an opinion of whether a prisoner's offense posed a substantial risk to others and qualified him for MDO commitment, it would have said so. As we explain, it appears to us that defendant makes the better argument because the recent amendments to the MDO Act do not address the admissibility of evidence or the use of expert testimony.

a. *Legislative Amendments to the MDO Act*

The original MDO Act included the requirements that the prisoner's crime involved force or violence, and that the prisoner was in treatment for the severe mental disorder for 90 days or more within the year prior to the prisoner's parole or release. (Former § 2960, subd. (b)(4), as amended by Stats. 1985, ch. 1419, § 1, pp. 5011-5017.) In 1987, the Legislature added section 2981, which authorizes the use of certified "records or copies of records" concerning the prisoner from any jail, prison or hospital where the prisoner was confined to establish prima facie evidence of the 90-day requirement. (§ 2981.) The purpose of this addition was to "preclude the necessity for records custodians to appear in court to authenticate

14

the records." (Sen. Com. on Judiciary, Rep. on Sen. Bill No. 425 (1987-1988 Reg. Sess.) as amended May 4, 1987, p. 3.)

In 1995, a year after *Miller* was decided, the Legislature amended section 2962 to delete from subdivision (d)(1) the offense of force or violence provision, and instead added specific crimes that would satisfy the force or violence requirement (§ 2962, subd. (e)(2)(A)-(O)), as well as a blanket provision in section 2962, subdivision (e)(2)(P), to explain that this was not an exclusive list of offenses that would satisfy the violent crimes requirement. (See Sen. Com. on Criminal Procedure, Rep. on Sen. Bill No. 34 (1995-1996 Reg. Sess.) as amended Apr. 5, 1995, pp. 4-5.) By creating new subdivisions for the force or violence requirement of section 2962, the Legislature expanded the list of crimes for MDO status. (*Ibid.*)

The Legislature again amended section 2962 in 1999, this time in response to our holding in *People v. Anzalone* (1999) 19 Cal.4th 1074. In *Anzalone*, we held that the force or violence element required the "actual, rather than implied, display of force or violence" for the triggering offense in section 2962, subdivision (e)(2)(P). (*Anzalone,* at p. 1077.) In the same year that we decided *Anzalone*, the Legislature overturned our holding in that case when it added subdivision (e)(2)(Q) to include, as noted above, "[a] crime in which the perpetrator expressly or impliedly threatened another with the use of force or violence likely to produce substantial physical harm . . . ." (§ 2962, subd. (e)(2)(Q); see Sen. Com. on Public Safety, Rep. on Sen. Bill No. 279 (1999-2000 Reg. Sess.) as amended Mar. 10, 1999, pp. 1-4.) By creating additional subdivisions in 1995 and 1999 for the force or violence requirement of section 2962, the Legislature gave these crimes new significance in the overall statutory scheme. Of note is the fact that these new provisions do not require certification by the chief psychiatrist similar to the criteria stated in section 2962, subdivision (d)(1). But there is no indication the

15

Legislature sought to expand what an expert could rely on to formulate an opinion as to a defendant's mental health status, or otherwise to minimize the importance of the requirements under Evidence Code section 801.

Additional amendments to the Sexually Violent Predator (SVP) Act (Welf. & Inst. Code, § 6600 et seq.) also support defendant's claim that the trier of fact may not rely on expert opinion testimony to establish facts underlying the commitment offense. For example, in 1996, the Legislature amended Welfare and Institutions Code section 6600 to permit the details of predicate sexual offenses to be proven by documentary evidence. (Stats. 1996, ch. 462, § 4, p. 2818.)[2] In *People v. Otto* (2001) 26 Cal.4th 200, we held that the statute created an exception to the rules of evidence to allow admission of multiple-level hearsay contained in the specified documents. (*Id*. at pp. 206-209.) These examples show that the Legislature knows how to adopt special rules of evidence to govern commitment proceedings. It has not done so in MDO Act proceedings, except for Penal Code section 2981 (allowing documentary evidence of 90-day treatment period). Additionally, in SVP proceedings, the Legislature authorized proof of the details of a commitment offense through admission of *documentary evidence*, not expert testimony.

b. *Venue*

The People also argue that legislative amendments that required the MDO judicial hearings to take place in the superior court of the county where a

---

[2]     Specifically, subdivision (a)(3) of section 6600 of the Welfare and Institutions Code provides in relevant part:  "The existence of any prior convictions may be shown with documentary evidence.  The details underlying the commission of an offense that led to a prior conviction, including a predatory relationship with the victim, may be shown by documentary evidence, including, but not limited to, preliminary hearing transcripts, trial transcripts, probation and sentencing reports, and evaluations by the State Department of State Hospitals."

16

defendant was incarcerated demonstrate the Legislature's intent to allow an expert to testify to all of the MDO Act's criteria. We disagree. The fact that the Legislature requires MDO judicial proceedings to take place "in the superior court of the county in which [the prisoner] is incarcerated or is being treated" (§ 2966, subd. (b)) does not add persuasive value to the People's argument. In some cases, the facts of an underlying conviction may be proved by admissible documentary evidence that does not require witness testimony, so it is likely that the Legislature was more concerned about securing defendant's presence and public safety, rather than unavailable witnesses, in requiring venue to be in the county where the prisoner is incarcerated or treated.

## CONCLUSION

We conclude that in a commitment hearing under the MDO Act, the People may not prove the facts underlying the commitment offense (that are necessary to establish the qualifying offense) through a mental health expert's opinion testimony. We note that the Legislature is free to create exceptions to the rules of evidence as it has done in the SVP context. We therefore reverse the Court of Appeal judgment, and remand the matter for proceedings consistent with our conclusion.

**CHIN, J.**

**WE CONCUR:**

**CANTIL-SAKAUYE, C. J.**
**WERDEGAR, J.**
**CORRIGAN, J.**
**LIU, J.**
**CUÉLLAR, J.**
**KRUGER, J.**

18

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** People v. Stevens

_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 213 Cal.App.4th 1401
**Rehearing Granted**


_____

**Opinion No.** S209643
**Date Filed:** December 10, 2015

_____

**Court:** Superior
**County:** San Luis Obispo
**Judge:** Barry T. LaBarbera


_____

**Counsel:**

Gerald J. Miller, under appointment by the Supreme Court, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Paul M. Roadarmel, Jr., Steven D. Matthews and Scott A. Taryle, Deputy Attorneys General, for Plaintiff and Respondent.

1

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Gerald J. Miller
P.O. Box 432
Agoura Hills, CA  91376
(818) 584-5986

Scott A. Taryle
Deputy Attorney General
300 South Spring Street, Suite 1702
Los Angeles, CA  90013
(213) 897-2363