Filed 4/11/16  P. v. Barrow CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>RAEKUBIAN BARROW,<br><br>    Defendant and Appellant. | 2d Crim. No. B264704<br>(Super. Ct. No. 15PT-00218)<br>(San Luis Obispo County) |

Raekubian Barrow appeals a judgment committing him to the State Department of State Hospitals for treatment as a mentally disordered offender (MDO). (Pen. Code, § 2962.)[1]  We conclude sufficient evidence supports the trial court's finding that Barrow meets the criteria for commitment.  Barrow's counsel did not render ineffective assistance when he did not offer a translation of an Italian newspaper article or object to expert testimony about a probation report and hospital progress notes.  We affirm.

BACKGROUND

In 2008, a jury convicted Barrow of making criminal threats after he threatened to kill his roommate and her family.  (§ 422.)  The roommate said Barrow had twice previously threatened her with knife.  The trial court sentenced Barrow to seven years in state prison.  Barrow's criminal history includes convictions for assault with a

---

[1] All statutory references are to the Penal Code unless otherwise stated.

deadly weapon or force likely to produce great bodily injury (§ 245), carrying a concealed weapon (former § 12025, subd. (a)), grand theft from a person (former § 487, subd. (c)), second degree robbery (§ 211), and false imprisonment (§ 236).

When Barrow completed his prison term in April 2015, the Board of Parole Hearings determined that he met the criteria for commitment as a mentally disordered offender. (§ 2962.) Barrow requested a trial. (§ 2966, subd. (a).) The trial court appointed counsel to represent him. Barrow waived jury. The court found beyond a reasonable doubt that Barrow meets the commitment criteria. It ordered him committed to the California Department of Mental Health for treatment.

At trial, Joe DeBruin, Ph.D., a psychologist employed by Atascadero State Hospital (ASH), opined that Barrow suffers from a delusional disorder, a severe mental disorder within the meaning of section 2962 that is not in remission. DeBruin based his assessment on a personal meeting with Barrow and consultations with a member of Barrow's treatment team. DeBruin also reviewed progress notes about Barrow's daily behavior at ASH, prior evaluations, and a probation officer's report that described Barrow's commitment offense and prior criminal history. The parties stipulated to the qualifying conviction. DeBruin testified that during the interview Barrow was "extremely delusional," his mood was "very elevated," and he had "very poor insight."

DeBruin described Barrow's "delusional ideation," and "persecutory delusions," including Barrow's belief that his arrest and conviction were a "setup," that his neighbor and roommate conspired against him, and that the district attorney was corrupt and gave a witness a free trip to Hawaii.

DeBruin also described Barrow's "grandiose delusions." Barrow told DeBruin that he was a judo champion at San Francisco State University, was the Northern California Tennis Association's player of the year, and played professional football in Italy as a "running back, a defense and a wide receiver." Barrow talked about playing for the National Football League and the Canadian Football League. Barrow told DeBruin that he was a model for Georgio Armani on the front cover of magazines and that "the paparazzi were all over [him] like ants." Barrow said he was a friend of female

celebrities and was a body guard for Janet Jackson. He said he was a computer programmer. He told DeBruin he had never committed a crime and went to prison three times as the result of ineffective assistance of counsel. In progress notes, a nurse noted that Barrow said that he was "a great inventor" and "a pilot with a hangar full of jets."

DeBruin said that Barrow's illness cannot be kept in remission without treatment and that Barrow does not follow his treatment plan. DeBruin said Barrow is "adamant" that he does not have a mental illness or need medication. DeBruin said Barrow is responsible about attending treatment groups. DeBruin acknowledged that delusional disorder is often refractory to medication, but said there are times when it can be treated with medication. He said Barrow's unwillingness to try medication indicates Barrow is not following his treatment plan.

Barrow testified. He said he was wrongfully convicted and his "dream team of investigators [would] expose the false imprisonment." He said he never threatened anybody; he was in a situation where he had to "defend [himself] and the attacks that have happened to [him]." Barrow has never taken psychotropic medications. He has attended all of his treatment group sessions, until recently when an injury to a finger prevented him from attending. If paroled, Barrow would work teaching tennis or "anything of that nature," work on an engineering degree, and "live happily ever after and stay out of trouble."

Barrow presented a photograph of himself from 1986 or 1987 that he described as a modeling "composite" and another photo that he described as his "head shot." He presented photographs of himself in football uniforms from the same time period and said they were taken when he played football in Italy, for which he was paid. He said he was going to play for the San Francisco 49ers when a National Football League strike prevented him. Barrow presented a copy of a newspaper article in Italian, which said, according to him, that he was a photo model, that he and another player scored touchdowns to win a championship, and that he "was about to leave for San

Francisco to play for the 49ers."[2] Barrow also presented photographs of himself playing tennis and posing with other tennis players at local tournaments in San Jose, in Menlo Park, and in Lake Tahoe.

## DISCUSSION

### *Ineffective Assistance of Counsel*

Barrow's claim that counsel rendered ineffective assistance is not supported by a showing that counsel's representation fell below an objective standard of reasonableness, or a reasonable probability that he would have obtained a more favorable result but for counsel's deficient performance. (*Strickland v. Washington* (1984) 466 U.S. 668, 688, 694.)

It is not reasonably probable that the outcome would have been different if counsel had offered an English translation of the newspaper article. The trial court allowed Barrow to testify to what the article said and no competing translation was offered. Even if a translation was consistent with Barrow's description, the outcome would be the same. The article was hearsay, and Barrow was probably the source of any statement in it that he had been a model or was going to play for the 49ers. Even if the statements were true, they would not undermine DeBruin's conclusions or those of the trial court based on their direct observations of Barrow's exaggerations, his expansive mood, and his delusions. As DeBruin testified, "[Barrow] was all over the map and very delusional during my interview"; Barrow had "a lot of elevated, expansive moods, speech that's pressured, . . . and a lot of perseverative thoughts about the wrongfulness of his conviction and his current situation." Barrow's testimony at trial was consistent with this characterization.

Counsel did not perform deficiently when he did not object to DeBruin's testimony on relevance or hearsay grounds. We begin with the presumption that counsel exercised reasonable professional judgment. (*People v. Holt* (1997) 15 Cal.4th 619, 703.)

---

[2] In a separate order, we deny Barrow's motion to augment the record to include an English translation of the article that was not admitted into evidence, refused, or lodged with the superior court. (Cal. Rules of Court, rules 8.122(b)(3), 8.155(a)(1)(A).)

4

"Counsel does not render ineffective assistance by failing to make motions or objections that counsel reasonably determines would be futile." (*People v. Price* (1991) 1 Cal.4th 324, 387.) An objection to DeBruin's testimony that Barrow suffers from delusions on relevance grounds would be futile. The parties stipulated to DeBruin's expertise, and his opinion was based on his personal interview of Barrow. That Barrow offered seeds of truth underlying his delusions did not render DeBruin's opinion inadmissible. Only the trial court could determine the weight and credibility of the testimony. (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206.) The trial court was in the best position to directly assess whether Barrow's mood was expansive while he testified and whether his ideations appeared to be based on fact or delusion.

An objection to DeBruin's testimony about hospital progress notes and the probation report also would have been futile. An expert may rely on hearsay documents of a type reasonably relied on by experts in their field. (Evid. Code, § 801, subd. (b).) The California Supreme Court recently determined that the MDO's qualifying offense may not be proven through an expert's testimony about a probation report. (*People v. Stevens* (2015) 62 Cal.4th 325, 339.) But the expert may rely on it and on other hearsay information to reach conclusions on the remaining commitment criteria. (*Id.* at p. 336.) Here, the parties stipulated that Barrow committed the qualifying offense. DeBruin could rely on the probation report and progress notes in reaching his opinion on the other commitment factors.

Moreover, DeBruin's diagnosis did not depend on the progress notes. DeBruin testified, "My judgment, as a whole, based on the interview alone, never mind the various notations in the medical chart and also never mind the consultation that I had with one of the members of his treatment team . . . , [is] that this gentleman was still very delusional and was not in remission of his particular mental illness."

*Substantial Evidence*

Substantial evidence supports the trial court's finding that Barrow qualified as an MDO beyond a reasonable doubt.

"A determination that a defendant requires treatment as an MDO rests on six criteria, set out in section 2926: the defendant (1) has a severe mental disorder; (2) used force or violence in committing the underlying offense; (3) had a disorder which caused or was an aggravating factor in committing the offense; (4) the disorder is not in remission or capable of being kept in remission absent treatment; (5) the prisoner was treated for the disorder at least 90 days in the year before being paroled; and (6) because of the disorder, the prisoner poses a serious threat of physical harm to other people." (*People v. Clark* (2000) 82 Cal.App.4th 1072, 1075-1076.) We draw all reasonable inferences in support of the judgment. "'"[I]f the [finding] is supported by substantial evidence, we must accord due deference to the trier of fact and not substitute our evaluation of a witness's credibility for that of the fact finder."'" (*Id.* at p. 1083.) The testimony of DeBruin and Barrow provide ample support for the trial court's findings.

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED.


GILBERT, P. J.

We concur:


YEGAN, J.


PERREN, J.

6

Michael L. Duffy, Judge

Superior Court County of San Luis Obispo

_____

Rudy Kraft, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Michael C. Keller, Eric J. Kohm, Deputy Attorneys General, for Plaintiff and Respondent.