Filed 3/26/19

<u>CERTIFIED FOR PARTIAL PUBLICATION</u>[*]

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B286317 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA456838) |
| v. | |
| NARCISCO CASTELLANO, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Laura F. Priver, Judge. Remanded with directions.

Aurora Elizabeth Bewicke, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant

---

[*] Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for publication with the exception of parts 1 and 2 of the Factual and Procedural Background and parts 1 through 3 of the Discussion.

Attorney General, Shawn McGahey Webb, Supervising Deputy Attorney General, David W. Williams and Jonathan J. Kline, Deputy Attorneys General, for Plaintiff and Respondent.

_____

A jury convicted Narcisco Castellano of possession of cocaine base for sale. After admitting the truth of several prior conviction and prior prison term enhancement allegations, Castellano was sentenced to three years in county jail plus three years of supervised release. On appeal Castellano primarily contends the People's expert witness improperly relied on race and/or national origin in forming an opinion as to the nature of the conduct described in a hypothetical question, in violation of Castellano's constitutional rights to due process and equal protection. Castellano also contends his trial counsel provided ineffective assistance by failing to move to exclude the improper testimony and by eliciting similar testimony during cross-examination of the expert witness. In a supplemental brief filed after this court decided *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*), Castellano contends the trial court violated his rights to due process and equal protection by imposing certain fines, fees and assessments absent evidence of his ability to pay them. We affirm Castellano's conviction and remand for the trial court to give Castellano the opportunity to request a hearing and to present evidence demonstrating his inability to pay the applicable fines, fees and assessments.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *The Information*

An information filed May 26, 2017 charged Castellano with possession of cocaine base for purpose of sale (Health & Saf.

Code, § 11351.5). It specially alleged Castellano had suffered five prior drug-related convictions within the meaning of Health and Safety Code section 11370.2, subdivision (a), and had served three prior separate prison terms for felonies within the meaning of Penal Code section 667.5, subdivision (b). Castellano pleaded not guilty and denied the special allegations.

   2. *Evidence at Trial*

   While working undercover near the intersection of 5th and San Pedro Streets in an area of downtown Los Angeles known as Skid Row, Los Angeles Police Officer Jose Galvez observed a middle-aged Cuban man he knew hand Castellano a clear plastic bag, which Castellano put in his left front pocket. No money was transferred between the two men. Using binoculars, Galvez saw the plastic bag contained off-white solids resembling cocaine base. Galvez relayed a call to Los Angeles Police Officer Adolfo Pacheco, who immediately detained Castellano. During a search of Castellano's left front pocket, Pacheco discovered a clear plastic bag containing 41 small separately wrapped packages ("bindles") of white solids later determined to be cocaine base.

   Testifying as an expert on the use and sale of controlled substances,[1] Officer Galvez stated a usable amount of cocaine

---

[1] Officer Galvez testified as both a percipient witness and as an expert. Regarding his expertise, Galvez testified he had worked as a police officer for 11 years and more than five years in narcotics divisions. As part of his specialized training, he had taken several classes relating to use, production, packaging and sale of cocaine base and other controlled substances. He also purchased cocaine base and other controlled substances in an undercover capacity and had been involved in more than 400 arrests involving cocaine base alone. Based on this

base can be as small as .02 grams; the package Castellano possessed weighed 16.17 gross grams (inclusive of the wrapping); and the amount in Castellano's possession was significantly greater than what an individual would typically possess for personal use.  Galvez also testified that the area where the transaction occurred was a high crime area controlled mostly by Cubans selling crack cocaine.  Given a hypothetical closely resembling the facts in this case,[2] Galvez opined the cocaine base was possessed for sale.  Asked to elaborate on the basis for his opinion, Galvez explained, "[My opinion is] [t]hat he possessed it for the purpose of sales based on the area, the area of 5th and San Pedro, based on my, you know, total seven years working in that area it's a high narcotic area where I said that specifically that block is known for the sales of cocaine base by male Hispanics that are mostly Cuban.  Also the amount, the 41 individually packaged bindles they are already prepackaged ready to sell.  A known street user wouldn't have that large amount of cocaine base or buy that much at one time.  So based on all that I formed the opinion he possessed it for sales."

testimony, the court overruled defense counsel's foundation objection.

[2]    The prosecutor asked Officer Galvez, "Assume that a male individual is seen on 5th Street by the intersection of San Pedro which is a known high narcotics area that traffics in the sale of crack cocaine, cocaine base, that individual is seen on 5th Street receiving a bindle containing 41 individually wrapped baggies of cocaine base and the approximate weight, total weight, of those 41 bindles is approximately 16 gross grams.  Do you have an opinion as to why that individual possessed the 41 bindles of rock cocaine?"

4

Defense counsel did not object to this testimony. No evidence was presented that Castellano is Cuban.

Officer Galvez also initially testified on direct examination that Castellano had $3,394 in small denominations on his person at the time of his arrest, a fact that "enhanced [Galvez's] opinion" that Castellano possessed the cocaine base for purpose of sale. However, confronted on cross-examination with his written report of Castellano's arrest, which stated that no money had been found on Castellano, Galvez admitted his arrest report was correct and his earlier testimony had been mistaken. He explained he had two different hearings to attend that day and had confused the two cases in this regard. The absence of money on Castellano's person, he then stated, did not alter his opinion that Castellano possessed the 41 individually wrapped packages of cocaine base for purpose of sale.

Castellano, who used a Spanish language interpreter throughout the trial, did not testify and did not present any evidence in his defense. The defense theory of the case was that Castellano possessed the drugs for personal use.

3. *Verdict and Sentence*

The jury found Castellano guilty of possession of a controlled substance for purpose of sale. In a bifurcated proceeding after waiving his right to a jury trial, Castellano admitted the truth of each of the special prior conviction and prior prison term enhancement allegations. The court struck each of the controlled substance recidivism enhancements; found two of the three specially alleged prior prison term enhancements true; and sentenced Castellano to a term of six years, split between three years in local custody and three years on

mandatory supervised release.[3]  The trial court imposed a $30 court facilities assessment (Gov. Code, § 70373); a $40 court operations assessment (Pen. Code, § 1465.8); a $50 criminal laboratory analysis fee (Health & Saf. Code, § 11372.5), which is subject to an additional state court construction penalty (Gov. Code, § 70372); and a $300 restitution fine (the statutory minimum) (Pen. Code, § 1202.4, subd. (b)).  The court imposed and suspended a corresponding $300 parole revocation fine (Pen. Code, § 1202.45).  Castellano did not object to the imposition of these assessments, fines and fees.

## DISCUSSION

1. *Castellano Has Forfeited His Challenge to Officer Galvez's Testimony Because He Did Not Object at Trial*

Citing testimony by Officer Galvez that "Cubans are known to hang out in the area [where the transaction occurred] and sell crack cocaine," the area was known for the sale of crack cocaine "by male Hispanics that are mostly Cuban," and Galvez's "yes" responses to questions on cross-examination whether the area was "controlled by Cubans" and that one "indicia of sales" in that area "would be nationality," Castellano contends Galvez, in violation of due process and equal protection, improperly relied on Castellano's national origin in opining he possessed the cocaine for sale.  However, Castellano did not object or move to strike or exclude that testimony on these grounds at trial. Accordingly, his challenge to that evidence is forfeited.  (Evid. Code, § 353 [appeal not subject to reversal for erroneous

---

[3]  The court imposed the upper term of four years for Castellano's underlying offense, plus one year for each of the prior prison term enhancement allegations found true.

6

admission of evidence absent specific objection]; see *People v. Simon* (2016) 1 Cal.5th 98, 139 [failure to raise constitutional challenge to victim impact evidence at trial resulted in forfeiture of that claim on appeal]; *People v. Abel* (2012) 53 Cal.4th 891, 924 ["[a] defendant who fails to make a timely objection or motion to strike evidence may not later claim that the admission of the evidence was error"]; *People v. Partida* (2005) 37 Cal.4th 428, 438-439 [appellant forfeited contention evidence was admitted in violation of due process when no objection made at trial]; *People v. Heard* (2003) 31 Cal.4th 947, 972, fn. 12 [same, citing cases].)

In arguing the forfeiture doctrine is inapplicable, Castellano contends defense counsel's foundation objection preserved the issue for appeal. However, that objection related to Officer Galvez's level of expertise. Castellano did not challenge the expert testimony on the ground it improperly considered race and/or national origin. (Evid. Code, § 353; see *People v. Stevens* (2015) 62 Cal.4th 325, 333 [courts will consider a claim of erroneously admitted evidence only when the original objection to the evidence was both timely and specific]; *People v. Partida, supra*, 37 Cal.4th at p. 437 [although defendant need not assert constitutional objection to preserve that issue on appeal if objection to the testimony in question was made on substantially similar ground under state law, "to the extent defendant asserts a different theory for exclusion than he asserted at trial, that assertion is not cognizable"].)

Castellano asserts the absence of a specific objection is immaterial because the court had assured him "any objection," regardless of the ground, would be sufficient to avoid forfeiture. That characterization of the record misapprehends the court's clear pronouncements. In pretrial remarks to counsel concerning

7

its trial management preferences, the court stated, "It's the court's position any objection would preserve your rights to appeal. If it's something you need a continuing objection to, I don't have a problem with [that]. You can ask for that. I think it saves time in terms of judicial economy and frustration on the part of the jurors instead of having objections over and over and over again." When the court's pronouncements are viewed as a whole and in context, the meaning is clear: A single objection to particular testimony would preserve the issue challenged; and a continuing objection would be granted when appropriate to facilitate trial management and avoid unnecessary interruptions. Nothing in the court's statements suggested Castellano was relieved of the obligation to make specific objections to specific testimony (whether by an initial or continuing objection) to preserve that issue for appeal. (See *People v. Ervine* (2009) 47 Cal.4th 745, 783 ["[w]e have long held that the proponent of evidence must identify the specific ground of admissibility at trial or forfeit that basis of admissibility on appeal"; "'[a] party cannot argue the court erred in failing to conduct an analysis it was not asked to conduct'"].)

　　2. *Castellano Has Not Demonstrated His Counsel Was Constitutionally Ineffective*

Castellano alternatively contends his counsel's failure to move to strike/exclude Officer Galvez's national-origin-related testimony on direct examination, as well as his counsel's introduction of similar testimony on cross-examination, amounted to ineffective assistance of counsel. "To establish ineffective assistance of counsel, a defendant must show that (1) counsel's representation fell below an objective standard of reasonableness under prevailing professional norms, and (2) counsel's deficient performance was prejudicial, i.e., there is a

8

reasonable probability that, but for counsel's failings, the result would have been more favorable to the defendant. [Citation.] A reasonable probability is a probability sufficient to undermine confidence in the outcome." (*People v. Rices* (2017) 4 Cal.5th 49, 80 [internal quotation marks omitted]; see *Strickland v. Washington* (1984) 466 U.S. 668, 694 [104 S.Ct. 2052, 80 L.Ed.2d 674].) ""'Whether to object to inadmissible evidence is a tactical decision; because trial counsel's tactical decisions are accorded substantial deference [citations], failure to object seldom establishes counsel's incompetence.'"" (*Rices,* at p. 80.)

Relying on *Buck v. Davis* (2017) __ U.S. __ [137 S.Ct. 759, 197 L.Ed.2d 1], Castellano contends there could have been no tactical reason for his counsel's failure to move to strike the improper aspects of Officer Galvez's testimony on direct examination, let alone to introduce additional harmful information on cross-examination. In *Buck* defense counsel introduced testimony from his own expert witness during a sentencing hearing in a capital case that the defendant's race was a predictive factor for future violence. The United States Supreme Court held the inexplicable introduction of race-based propensity evidence by defense counsel was a patently clear case of ineffective assistance of counsel. That testimony, fueling a particularly potent and noxious racial stereotype that African-American men were violence prone, effectively told the jury it could sentence the defendant to death based on nothing more than the color of the defendant's skin. (*Id.* at pp. 776-777.)

As Castellano observes, several federal jurisdictions have similarly condemned an expert's use of racial and ethnic stereotypes to opine on criminal culpability. (See *United States v. Cabrera* (9th Cir. 2000) 222 F.3d 590, 596 [federal law

9

enforcement expert witness who frequently referred to defendant's Cuban origins and testified that large populations of drug traffickers were of Cuban descent improperly injected national origin into the trial in violation of due process and equal protection]; *United States v. Vue* (8th Cir. 1994) 13 F.3d 1206, 1213 [when defendants accused of drug trafficking were of Hmong descent, expert testimony that 95 percent of opium smuggling in the same geographic area involved Hmong people violated due process; the "injection of ethnicity into the trial clearly invited the jury to put the Vues' racial and cultural background into the balance in determining their guilt"]; *United States v. Cruz* (2d Cir. 1992) 981 F.2d 659, 664 [in trial involving Dominican defendant, expert's description of area where drug transaction occurred as "inundated with drug dealing" and "hav[ing] a very high Hispanic" and Dominican population was improper; "[i]njection of a defendant's ethnicity into a trial as evidence of criminal behavior is self-evidently improper and prejudicial"].)

To be sure, testimony regarding race, ethnicity or national origin may be relevant in certain instances without invoking invidious stereotypes. (See generally *Bains v. Cambra* (9th Cir. 2000) 204 F.3d 964, 974 (*Bains*) [distinguishing between permissible evidence relating to the defendant's specific adherence to Sikh cultural norms and impermissible evidence and argument implying defendant's criminal culpability based solely on the defendant's race or ethnicity].) Nonetheless, absent racial stereotyping, it is difficult to conceive how Officer Galvez's unsolicited remarks on the role in drug trafficking played by the Cuban population in the area he surveilled were relevant to the intent of the hypothetical individual described by the prosecutor.

In significant contrast to the federal cases Castellano cites, however, there was no evidence that Castellano was Cuban, as opposed to the individual who transferred the cocaine base to him. Thus, to the extent Castellano's counsel not only failed to move to strike/exclude Galvez's unsolicited references to Cuban drug dealers on direct examination but also emphasized that testimony in cross-examination, it is conceivable the decision was strategic—Castellano was not Cuban and thus did not fit the expert's description of the drug-selling population. Although defense counsel did not make that point during closing argument, on this record we cannot foreclose the possibility that counsel's choices in emphasizing nationality as a factor for consideration were tactical. (Cf. *People v. Carrasco* (2014) 59 Cal.4th 924, 987 [forgoing presentation of evidence promised in opening statement can be reasonable tactical decision depending on the circumstances]; *People v. Huggins* (2006) 38 Cal.4th 175, 253 [even if prosecutor's remarks were improper, defense counsel's decision to forego objection and use prosecutor's argument to his advantage was reasonable tactical choice].)

In any event, even if defense counsel's actions and omissions were deficient, Castellano has not shown prejudice. The evidence of Castellano's intent to sell the drugs was overwhelming. He was found with a significant amount of cocaine base, substantially greater than the amount usually possessed solely for personal use. The drugs were individually wrapped in 41 separate small plastic bags containing relatively similar amounts, packaging that indicated they were meant for sale. As for Officer Galvez's Cuban references, neither the prosecutor nor defense counsel suggested during closing argument that the jury should consider Castellano's national

11

origin as a factor in determining his intent (cf. *Bains, supra,* 204 F.3d at p. 970), and the jury was instructed not to let "nationality, national origin, race or ethnicity" or Castellano's use of a Spanish language interpreter influence its decision. We presume the jury followed these instructions. (*People v. Chism* (2014) 58 Cal.4th 1266, 1299.) On this record, it is not reasonably probable that, absent Galvez's limited testimony about Cuban drug sellers in the Skid Row area, Castellano would have received a more favorable verdict.

3. *Officer Galvez Did Not Testify to False Facts or to Previously Excluded Evidence*

Castellano contends the court abused its "gatekeeper function" by allowing the jury to consider Officer Galvez's opinion when it was based on false facts—that Castellano had a large sum of money on him when he was arrested. However, Castellano's counsel emphasized this mistake of fact during Galvez's cross-examination, and Galvez opined again that the absence of money did not alter his opinion. The jury was fully apprised of the situation. There was no error.

Castellano also contends Officer Galvez related previously excluded evidence in violation of the court's pretrial rulings. Specifically, during cross-examination defense counsel asked Galvez to identify the factors he typically considered "to formulate an opinion that something is possessed for purpose of sales." Galvez replied, "[It] varies from situation to situation but the area of where it is located, the amount of narcotics, sometimes prior knowledge of the individual, and my observations of the specific act." Castellano insists that testimony concerning prior knowledge of an individual violated the court's in limine ruling excluding evidence relating to Galvez's prior arrests of Castellano. Contrary to Castellano's

12

contention, Galvez's testimony did not suggest Galvez knew Castellano or had previous encounters with him. In any event, it was defense counsel who elicited the testimony. Accordingly, any error was invited. (See *People v. Penunuri* (2018) 5 Cal.5th 126, 157 [when defense counsel requested the jury be told about defendant's convictions so that they could properly judge his testimony, any error in admitting such evidence was invited].)[4]

> 4. *Remand Is Necessary To Afford Castellano the Opportunity To Request a Hearing Concerning His Ability To Pay Fines, Fees and Assessments*

>> a. *Castellano's argument under Dueñas has not been forfeited*

In *Dueñas*, *supra*, 30 Cal.App.5th 1157 this court held it violated due process under both the United States and California Constitutions to impose a court operations assessment as required by Penal Code section 1465.8 or the court facilities assessment mandated by Government Code section 70373, neither of which is intended to be punitive in nature, without first determining the convicted defendant's ability to pay. (*Dueñas*, at p. 1168.) A restitution fine under Penal Code section 1202.4, subdivision (b), in contrast, is intended to be, and is recognized as, additional punishment for a crime. Penal Code section 1202.4, subdivision (c), provides a defendant's inability to

---

[4] Castellano does not directly contend his counsel was ineffective in eliciting that testimony. To the extent his Sixth Amendment argument in his appellate brief can be liberally construed to encompass that issue, the argument fails. Officer Galvez's response to counsel's entirely appropriate question was general and brief. Counsel was not ineffective in asking the question or in failing to move to strike the response.

pay may not be considered a compelling and extraordinary reason not to impose the restitution fine; inability to pay may be considered only when increasing the amount of the restitution fine above the minimum required by statute.  To avoid the serious constitutional question raised by these provisions, we held, although the trial court is required to impose a restitution fine, the court must stay execution of the fine until it is determined the defendant has the ability to pay the fine.  (*Dueñas*, at p. 1172.)

In supplemental briefing filed with the permission of this court, Castellano contends under *Dueñas, supra,* 30 Cal.App.5th 1157, the assessments and fees imposed by the trial court should be reversed and the execution of the restitution fine stayed.  The People argue Castellano forfeited this issue on appeal because he failed to raise it in the trial court.  However, at the time Castellano was sentenced, *Dueñas* had not yet been decided; and no California court prior to *Dueñas* had held it was unconstitutional to impose fines, fees or assessments without a determination of the defendant's ability to pay.  Moreover, none of the statutes authorizing the imposition of the fines, fees or assessments at issue authorized the court's consideration of a defendant's ability to pay.  Indeed, as discussed, in the case of the restitution fine, Penal Code section 1202.4, subdivision (c), expressly precluded consideration of the defendant's inability to pay.  When, as here, the defendant's challenge on direct appeal is based on a newly announced constitutional principle that could not reasonably have been anticipated at the time of trial, reviewing courts have declined to find forfeiture. (See, e.g., *O'Connor v. Ohio* (1966) 385 U.S. 92, 93 [87 S.Ct. 252, 17 L.Ed.2d 189]; *People v. Doherty* (1967) 67 Cal.2d 9, 13-14; see generally

14

*People v. Brooks* (2017) 3 Cal.5th 1, 92 ["'[r]eviewing courts have traditionally excused parties for failing to raise an issue at trial where an objection would have been futile or wholly unsupported by substantive law then in existence'"].) We similarly decline to apply the forfeiture doctrine to Castellano's constitutional challenge.

       b. *A limited remand is appropriate*

Relying on *Dueñas, supra,* 30 Cal.App.5th 1157, Castellano asserts the court facilities and operations assessments and the criminal laboratory analysis fee should be reversed, and execution of the restitution fine stayed, unless and until the People prove he has the present ability to pay the fine. *Dueñas* does not support that conclusion in the absence of evidence in the record of a defendant's inability to pay. In *Dueñas* the defendant challenged at the sentencing hearing the fees and fines imposed, asserting she was unable to pay them. (*Id.* at p. 1162.) She requested an ability-to-pay hearing and presented evidence— which the court credited—that she lacked the ability to pay the fines and fees it imposed. (*Id.* at pp. 1160-1163.) Our holding in *Dueñas* that the fees and assessments could not constitutionally be assessed and that execution of the restitution fine had to be stayed was based on the trial court's uncontested finding that Dueñas was unable to pay the amounts imposed. Here, in contrast, Castellano did not request an ability-to-pay hearing at his pre-*Dueñas* sentencing; thus, no evidence exists in the record from which to infer any findings in this regard.

Consistent with *Dueñas*, a defendant must in the first instance contest in the trial court his or her ability to pay the fines, fees and assessments to be imposed and at a hearing present evidence of his or her inability to pay the amounts

15

contemplated by the trial court. In doing so, the defendant need not present evidence of potential adverse consequences beyond the fee or assessment itself, as the imposition of a fine on a defendant unable to pay it is sufficient detriment to trigger due process protections. (*Dueñas*, *supra*, 30 Cal.App.5th at pp. 1168-1169.) The trial court then must consider all relevant factors in determining whether the defendant is able to pay the fines, fees and assessments to be imposed. Those factors may include, but are not limited to, potential prison pay during the period of incarceration to be served by the defendant.[5] If the trial court determines a defendant is unable to pay, the fees and assessments cannot be imposed; and execution of any restitution fine imposed must be stayed until such time as the People can show that the defendant's ability to pay has been restored. (*Id*. at pp. 1168-1169, 1172.)

---

[5] A bill currently pending in the Legislature proposes the following factors be considered in determining a defendant's ability to pay: the defendant's present financial circumstances; whether the defendant is receiving any type of government benefits, including means-tested benefits; whether the defendant was represented by court-appointed counsel; the defendant's reasonably discernible future financial circumstances; the likelihood the defendant will be able to obtain employment within a six-month period from the date of the court's consideration of the issue; the amount of victim restitution ordered, if any; and any other factor that may bear upon the defendant's inability to pay. (Assem. Bill No. 927 (2019-2020 Reg. Sess.) § 1.)

16

This procedure is already standard in other contexts in which a litigant seeks relief or assistance based on his or her financial condition. A litigant seeking fee waivers, for instance, must complete an application for an initial fee waiver with information supporting his or her claim to be exempt from filing fees on the basis of his or her financial condition, such as receipt of certain public benefits, income below the federal poverty guidelines, or the inability to pay court fees without using moneys that normally would pay for the common necessaries of life for the applicant and his or her family. (Gov. Code, §§ 68632, 68633.) Similarly, when a defendant requests, pursuant to Government Code section 27706, subdivision (a), to be represented by the public defender because he or she cannot afford to retain counsel, the trial court may require the defendant to file a financial statement to assist the court in making the final determination whether the defendant is financially able to employ counsel and qualifies for the services of the public defender. (Gov. Code, § 27707.)

As Castellano's conviction and sentence are not yet final, we remand the matter to the trial court so that he may request a hearing and present evidence demonstrating his inability to pay the fines, fees and assessments imposed by the trial court.

## DISPOSITION

The conviction is affirmed, and the matter remanded to give Castellano the opportunity to request a hearing on his ability to pay the fines, fees and assessments imposed by the trial court. If he demonstrates the inability to pay, the trial court must strike the court facilities assessment (Gov. Code, § 70373), the court operations assessment (Pen. Code, § 1465.8) and the criminal laboratory analysis fee (Health & Saf. Code, § 11372.5);

17

and it must stay the execution of the restitution fine.  If Castellano fails to demonstrate his inability to pay these amounts, the fines, fees and assessments imposed may be enforced.


                                    PERLUSS, P. J.

     We concur:



          ZELON, J.



          FEUER, J.