Filed 12/30/22  P. v. Gomez CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| THE PEOPLE, | B316393 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. LA037390) |
| v. | |
| ARMANDO GOMEZ, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Richard H. Kirschner, Judge.  Affirmed.

Patricia J. Ulibarri, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior

Assistant Attorney General, Idan Ivri and Thomas C. Hsieh, Deputy Attorneys General, for Plaintiff and Respondent.

---

## INTRODUCTION

On April 29, 2002, a jury found defendant and appellant Armando Gomez guilty of first degree murder for his role in a late-night February 3, 2001, robbery at a self-serve car wash where a customer was shot and killed and Gomez's girlfriend was shot and wounded.  On August 6, 2002, the trial court sentenced Gomez to life in prison without the possibility of parole.  This court affirmed the judgment on September 17, 2003.

On June 13, 2020, after changes in the law regarding the natural and probable consequences doctrine and the scope of the felony-murder rule, Gomez filed a petition to vacate his murder conviction and for resentencing under former Penal Code section 1170.95.[1]  After conducting an evidentiary hearing, the trial court denied the petition, concluding beyond a reasonable doubt Gomez was a major participant in the robbery underlying his murder conviction who acted with reckless indifference to human life.

On appeal, Gomez argues the trial court improperly relied on hearsay evidence in denying his petition and also that, with or without the hearsay statements, the court's

---

[1]     Undesignated statutory references are to the Penal Code.

2

determination was not supported by substantial evidence. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND
#### A. Gomez's 2002 Murder Conviction

In 2001, Gomez, his girlfriend Claudia Venegas and Ricardo Gomez[2] were charged with the murder of Antonio Cruz. At the preliminary hearing, the prosecution called Los Angeles Police Department Officer Shawna Green as a witness. Officer Green testified that, within hours of Cruz's murder, she and a detective conducted a recorded interview of Ricardo after advising him of his constitutional rights. Officer Green recounted statements made by Ricardo describing his and Gomez's respective roles in the robbery of Cruz, including a statement that Ricardo was the one who shot Cruz.

Officer Green testified that Ricardo said Gomez had pointed out a customer at the car wash and asked Ricardo "'Do you want to jack him' or steal from him," and Ricardo agreed. Ricardo said he then armed himself with Gomez's assault rifle, which he said was typically stored in the GMC Suburban that he, Gomez and Venegas were riding in, and loaded a clip into it. After Venegas pulled the Suburban into the car wash and behind Cruz's car, Gomez and Ricardo got out of the vehicle. While Ricardo stood in front of victim

---

[2]     Because appellant Armando Gomez and Ricardo Gomez share a surname, we refer to Ricardo by his first name.

Cruz with the rifle in his hand, Gomez verbally demanded money from Cruz, then took a fanny pack from Cruz's car. As soon as Gomez and Ricardo re-entered the Suburban, Ricardo saw that Cruz had approached Venegas in the driver's seat and that Cruz was wrestling with or hitting Venegas (who was pregnant). Ricardo exited the Suburban and saw that Gomez did, too. Ricardo walked around the Suburban to its left rear side, then "shot towards where the victim was standing inside the driver door."

Officer Green further testified that Ricardo stated that, upon seeing Cruz struggling with Venegas, Ricardo cocked the rifle. Gomez walked with Ricardo to the left rear side of the vehicle. There, Ricardo fired three shots; he believed the first struck Venegas because he heard her scream, while the second and third struck Cruz, who he saw bleeding. Ricardo and Gomez got back in the Suburban and Venegas drove away.

All three defendants were held to answer. After the preliminary hearing, the charges against Ricardo, who was 17 years old the night Cruz was shot, were severed for separate trial. At the joint trial of Gomez and Venegas, Ricardo did not testify and no evidence of his out-of-court statements was admitted.[3] On direct appeal, Gomez and Venegas challenged the sufficiency of the evidence to support their convictions for murder committed in the commission of a robbery. This court affirmed their convictions in an

---

[3] Ricardo was deemed unavailable as a witness after he asserted his Fifth Amendment right against self-incrimination.

4

unpublished opinion. (*People v. Gomez* (Sep. 17, 2003, No. B161030) [2003 Cal.App.Unpub. LEXIS 8831] (*Gomez I*).)

As this court has previously described, there was testimony at trial from two witnesses who lived across the street who heard approximately four gun shots and saw a dark-colored GMC Suburban leave the car wash. (*Gomez I, supra*, 2003 Cal.App.Unpub. LEXIS 8831, at *2-*3.) One of these witnesses saw Cruz, still alive, lying on the ground near where the Suburban departed and had a family member call 911. (*Id.* at *3.) Soon after, police officers saw a Suburban matching the witnesses' description driving erratically less than two miles from the car wash. (*Ibid.*) After the officers pulled the Suburban over, Gomez exited the driver's seat and said his girlfriend had been shot. (*Ibid.*) Venegas, the owner of the Suburban, was seated in the front passenger seat and had a gunshot wound to her knee. (*Id.* at *3-*4.) Ricardo was seated in the second row. (*Id.* at *4.)

Blood was found around the driver's seat, including on the step into the vehicle, and a trail of blood and tissue was found between the driver's seat and the front passenger's seat. (*Gomez I, supra*, 2003 Cal.App.Unpub. LEXIS 8831, at *4.) DNA testing revealed that blood samples from the front floorboard matched Venegas, while samples from the interior of the driver's door and window matched Cruz. (*Id.* at *6.) A fanny pack containing Cruz's credit cards and other items was found under the second row of seats. (*Id.* at *6-*7.)

There was a bullet hole in the lower portion of the driver's door, determined to have been caused by a bullet fired from the rear of the vehicle while the driver's door was open. (*Gomez I*, *supra*, 2003 Cal.App.Unpub. LEXIS 8831, at *6.) There was also evidence that a bullet struck the inside of the driver's side door. (*Ibid.*) A prosecution expert witness opined that Cruz was standing inside the open driver's door when he was shot, facing the interior of the vehicle. (*Ibid.*) The expert further concluded that Venegas was seated in the driver's seat when the shots were fired, and subsequently moved over to the passenger's seat. (*Ibid.*)

An assault rifle owned by Gomez was found in the third row of seats, loaded with one round in the firing chamber. (*Gomez I*, *supra*, 2003 Cal.App.Unpub. LEXIS 8831, at *4-*5.) A rifle magazine containing live ammunition was found in a locked compartment in the center console and matched four shell casings found at the car wash. (*Id.* at *3-*5.) Ricardo's fingerprints were detected on the rifle. (*Id.* at *6.) Gunshot residue similar to that from the live ammunition found in the Suburban was detected on Gomez's left hand. (*Id.* at *5.) A criminalist testified that a positive gunshot residue test can result from, inter alia, firing a weapon or being in the immediate vicinity of a firearm when it is fired. (*Ibid.*)

The trial court instructed the jury that Gomez could be convicted of murder under the felony-murder rule or the natural and probable consequences doctrine, each premised on the underlying robbery of Cruz. (*Gomez I*, *supra*, 2003

6

Cal.App.Unpub. LEXIS 8831, at \*22.)  The jury convicted Gomez of first degree murder and found true a special circumstance allegation that the murder was committed in the course of a robbery within the meaning of section 190.2, subdivision (a)(17).  (*Id.* at \*7.)  The court sentenced Gomez to life in prison without parole under section 190.2, subdivision (a).  (*Id.* at \*29.)  On direct appeal, we affirmed the judgment.  (*Id.* at \*2, \*30.)

### *B. Gomez's 2020 Resentencing Petition*

More than fifteen years after Gomez's conviction, the Legislature enacted Senate Bill No. 1437 (2017-2018 Reg. Sess.) (SB 1437), which eliminated the natural and probable consequences doctrine as a basis for murder liability and "significantly narrowed the scope of the felony-murder rule." (*People v. Strong* (2022) 13 Cal.5th 698, 703, 707, fn. 1 (*Strong*).)  Gomez subsequently filed his petition for resentencing under former section 1170.95, which has been renumbered as section 1172.6.  The prosecutor opposed the petition.

At a July 13, 2021, hearing on the resentencing petition, the trial court determined Gomez was entitled to an evidentiary hearing.  Both parties stated they did not intend to present any new evidence at the hearing.  In response to the prosecutor's characterization of the matter as "largely a circumstantial evidence case where the defendant is the actual killer or [an] aider and abettor," the court commented,

7

"I recognize that the issue here, [to a] large extent turns upon who the shooter was or was not."

On August 31, 2021, Gomez filed a brief in anticipation of the evidentiary hearing. He attached as an exhibit an eight-page excerpt from the transcript of Officer Green's preliminary hearing testimony. In the opening lines of the brief, Gomez pointed to the confession Officer Green attributed to Ricardo, arguing: "The issue this Court is concerned with is who is the shooter? [¶] The prosecution omitted the elephant in the room; [¶] Ricardo [] confessed to b[e]ing the shooter. [¶] Since Ricardo['s] fingerprints (and not [Gomez's] fingerprints) were on the rif[]le the confession is believable." Gomez emphasized in his brief that, according to Ricardo's statements, Gomez never held the rifle. Gomez argued that, based on Ricardo's description of what transpired, Gomez's murder conviction could not stand.

On September 13, 2021, the prosecution filed a brief in anticipation of the evidentiary hearing. Observing that Gomez had provided the trial court with only part of Officer Green's preliminary hearing testimony, the prosecution attached as an exhibit a transcript of four additional pages of Officer Green's testimony.

At the September 15, 2021, evidentiary hearing, the court characterized Ricardo's out-of-court statements as hearsay but found they were nevertheless admissible in the resentencing proceeding because there was a substantial basis for the court to believe them to be reliable. The court explained that "[t]he indicia of reliability in this matter

8

include the following: The statement was Mirandized and taken a few hours after the murder when the events were fresh. While being questioned, Ricardo was composed and acted like an adult. And most importantly, Ricardo confessed to being the actual shooter." The court noted there was also circumstantial evidence that Gomez was himself the shooter, but concluded this evidence did not rise to the level of proof beyond a reasonable doubt. Gomez did not object to the court's consideration of Ricardo's out-of-court statements on hearsay grounds or any other.

The prosecutor argued the evidence proved beyond a reasonable doubt that Gomez was a major participant in the robbery and that he acted with reckless indifference to human life. Gomez argued the evidence showed, at most, that Gomez participated in a garden-variety armed robbery, and that this was insufficient to establish reckless indifference to human life. After hearing from both sides, the trial court denied Gomez's petition. The court found that the evidence, with or without Ricardo's out-of-court statements, proved beyond a reasonable doubt that Gomez was a major participant in the robbery and that he acted with reckless indifference to human life, supporting a conviction for felony murder under current law.[4]

_____

[4] The court also found the evidence proved beyond a reasonable doubt that Gomez directly aided and abetted the murder with malice aforethought. On appeal, the Attorney General contends substantial evidence supported this finding under theories of express and implied malice. We need not
*(Fn. is continued on the next page.)*

Gomez timely appealed.

## DISCUSSION
### Governing Law

The Legislature enacted SB 1437 "to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f); accord, § 189, subd. (e); *People v. Lewis* (2021) 11 Cal.5th 952, 959 (*Lewis*).) SB 1437 also added section 1170.95 to the Penal Code which, as mentioned above, was later renumbered to section 1172.6. (Stats. 2018, ch. 1015, § 4; Stats. 2022, ch. 58, § 10.) This section permits defendants convicted of felony murder or murder under a natural and probable consequences theory, but who could not be convicted of murder following the changes to sections 188 and 189, to petition the sentencing court to vacate the conviction and resentence on any remaining counts. (§ 1172.6, subd. (a).)

A petition for relief under section 1172.6 must include a declaration by the petitioner that he or she is eligible for relief based on all the requirements of subdivision (a), the

---

address these theories, as we conclude the court did not err in finding the evidence showed Gomez was guilty of felony murder.

superior court case number and year of the petitioner's conviction, and a request for appointment of counsel, should the petitioner seek such an appointment.  (§ 1172.6, subd. (b)(1).)  Subdivision (c) of section 1172.6 provides that "[w]ithin 60 days after service of a petition that meets the requirements set forth in subdivision (b), the prosecutor shall file and serve a response.  The petitioner may file and serve a reply within 30 days after the prosecutor's response is served.  These deadlines shall be extended for good cause. After the parties have had an opportunity to submit briefings, the court shall hold a hearing to determine whether the petitioner has made a prima facie case for relief. If the petitioner makes a prima facie showing that the petitioner is entitled to relief, the court shall issue an order to show cause.  If the court declines to make an order to show cause, it shall provide a statement fully setting forth its reasons for doing so."

"If the trial court determines that a prima facie showing for relief has been made, the trial court issues an order to show cause, and then must hold a hearing 'to determine whether to vacate the murder conviction and to recall the sentence and resentence the petitioner on any remaining counts in the same manner as if the petitioner had not . . . previously been sentenced, provided that the new sentence, if any, is not greater than the initial sentence.' ([§ 1172.6], subd. (d)(1).)"  (*Lewis, supra*, 11 Cal.5th at 960.) At the hearing, the parties may rely on the record of conviction or present "new or additional evidence" to support

11

their positions, and "the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of murder . . . under California law as amended by the changes to Section 188 or 189 made effective January 1, 2019."  (§ 1172.6, subd. (d)(3).)

## Analysis

On appeal, Gomez argues the trial court's order denying his resentencing petition should be reversed because: (1) even if the trial court properly considered Ricardo's hearsay statements, there was insufficient evidence to support a rational trier of fact finding beyond a reasonable doubt that Gomez was guilty of felony murder under current law; (2) the trial court erred in considering Ricardo's hearsay statements; and, alternatively, (3) Gomez's counsel for the resentencing petition proceedings was constitutionally ineffective.  For reasons discussed below, we disagree.

### A. Substantial Evidence Supported the Trial Court's Determination that Gomez Was a Major Participant in the Robbery and Acted with Reckless Indifference to Human Life

We review the trial court's determination at the section 1172.6 (former section 1170.95) evidentiary hearing for substantial evidence.  Under this standard, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence, that is,

evidence that is reasonable, credible, and of solid value, from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.  In so doing, we presume the existence of every fact the trier could reasonably deduce from the evidence.  (*People v. Nieber* (2022) 82 Cal.App.5th 458, 476.)

"[W]hen Senate Bill 1437 amended Penal Code section 189 [the felony murder statute] to incorporate major participation and reckless indifference requirements, it codified the understanding of those requirements elucidated in *Banks* and *Clark*." (*Strong*, *supra*, 13 Cal.5th at 710, citing *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*) and *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*).)  In *Banks*, our Supreme Court provided a non-exhaustive list of factors relevant to determining whether an individual was a "major participant" in an underlying felony, including: (1) the defendant's role in planning the criminal enterprise that led to death; (2) the defendant's role in supplying or using lethal weapons; (3) the defendant's awareness of the dangers posed by the nature of the crime, the weapons used, or the defendant's past experience with the other participants; (4) whether the defendant was present at the scene of the killing; (5) whether the defendant's actions or inactions played a particular role in the death; and (6) what the defendant did after lethal force was used.  (*Banks*, *supra*, 61 Cal.4th at 803.)  "No one of these considerations is necessary, nor is any one of them necessarily sufficient." (*Ibid.*)  In determining whether a defendant was a major

participant in an offense, the finder of fact must consider the totality of the circumstances.  (*Id.* at 802.)

In *Clark*, the Supreme Court expounded upon the meaning of "reckless indifference to human life" and set forth a non-exclusive list of relevant factors, including: (1) the defendant's knowledge of weapons used in the crime; (2) how those weapons were used; (3) the number of weapons used; (4) the defendant's proximity to the crime; (5) the defendant's opportunity to stop the killing or aid the victim; (6) the duration of the crime; (7) the defendant's knowledge of the killer's propensity to kill; and (8) the defendant's efforts, if any, to minimize the possibility of violence during the crime.  (*Clark*, *supra*, 63 Cal.4th at 616-623.)  Like the *Banks* factors listed above, "'[n]o one of these considerations is necessary, nor is any one of them necessarily sufficient.'" (*Id.* at 618.)  "We analyze the totality of the circumstances to determine whether [Gomez] acted with reckless indifference to human life."  (*In re Scoggins* (2020) 9 Cal.5th 667, 677 (*Scoggins*).)

Here, the trial court analyzed the evidence in two phases, first considering only the evidence actually presented at trial, and then adding in Ricardo's out-of-court statements.  In the first scenario, we conclude that there was evidence sufficient to support each of the following inferences: (1) the trio in the Suburban pulled into the driveway of the car wash late at night with a plan to rob the man washing his car there alone; (2) Gomez supplied the assault rifle used to carry out the robbery and was

14

accordingly aware of its presence and its nature; (3) Gomez was present for the entirety of the robbery and shooting; (4) Gomez did not act to disrupt the chain of events, despite being close enough to the shooting that he got gunshot residue on his hand; and (5) Gomez fled in the Suburban without attempting to render, or even call for, aid to Cruz, who was visibly wounded but still alive. We accordingly conclude that substantial evidence supported the trial court's determination beyond a reasonable doubt, based on the evidence at trial, that Gomez was a major participant in the robbery who acted with reckless indifference to human life. (*Banks*, *supra*, 61 Cal.4th at 803 ["major participant" factors include defendant's role in supplying lethal weapons, awareness of dangers posed, presence at scene of the killing, what defendant did after lethal force was used and whether defendant's actions or inactions played a particular role in the death]; *Clark*, *supra*, 63 Cal.4th at 616-623 ["reckless indifference" factors include defendant's knowledge of weapons used in the crime, proximity to the crime, opportunity to stop the killing or aid the victim, and efforts, if any, to minimize the risk of violence during the commission of the crime].)

Ricardo's out-of-court statements would allow a rational finder of fact to further infer that: (6) the presence and participation of Venegas, whom Gomez knew was pregnant, aggravated the already high risk of death associated with carrying out the armed robbery; (7) Gomez was the instigator in planning the robbery; (8) Gomez

15

actively participated in the robbery by personally demanding Cruz's property while Ricardo held Cruz at gunpoint and was nearby when Ricardo walked around the car to the position from which he shot Cruz; and (9) Gomez was aware that Cruz was physically confronting Venegas to recover his property, increasing the risk that Ricardo would discharge the rifle, which risk Gomez failed to minimize by surrendering Cruz's property to him, telling Ricardo not to shoot, or both.  (See *Strong*, *supra*, 13 Cal.5th at 706 ["major participant" factors include defendant's role in planning the underlying crime, "reckless indifference" factors include defendant's failure to restrain, and defendant's proximity to the killing is a factor in both "major participant" and "reckless indifference" determinations].)

Gomez argues that the evidence before the trial court here is indistinguishable from cases where courts have found the evidence was insufficient to show a defendant was a major participant or acted with reckless indifference to human life.  We disagree.  In many of Gomez's cited cases, including *Banks*, the defendants were no more than getaway drivers who waited for their accomplices some distance from the crime scenes.[5]   In the remaining cases Gomez cites, including *Clark*, the defendants similarly were not present

---

[5]     (See *Banks*, *supra*, 61 Cal.4th at 804-811; *Enmund v. Florida* (1982) 458 U.S. 782, 786-788 & fn. 2, 798-801; *In re Taylor* (2019) 34 Cal.App.5th 543, 557-561; *In re Ramirez* (2019) 32 Cal.App.5th 384, 404-408; *In re Bennett* (2018) 26 Cal.App.5th 1002, 1018-1026)

while their accomplices committed the crimes.[6] ( We conclude that, with or without Ricardo's out-of-court statements, substantial evidence supported the trial court's determination that Gomez was a major participant in the robbery who acted with reckless indifference to human life.

### B. Gomez's Hearsay Objection Is Barred by the Doctrines of Invited Error and Forfeiture

Gomez put before the trial court the very hearsay evidence he now faults the court for considering, namely Officer Green's preliminary hearing testimony recounting Ricardo's out-of-court statements. Although the prosecution subsequently put forward additional excerpts of Officer Green's testimony, it did so only in response to the incomplete excerpt Gomez proffered. Had Gomez not put Ricardo's statements in issue, it appears the trial court would have had no occasion to consider them. Under the doctrine of invited error, "on appeal a litigant cannot object to the admission of incompetent evidence offered by him." (*Jentick v. Pacific Gas & Electric Co.* (1941) 18 Cal.2d 117, 121; accord, *People v. Flinner* (2020) 10 Cal.5th 686, 723 ["[Defendant] cannot claim error in admission of evidence he elicited"].)

Even where a party does not invite error, he may forfeit an evidentiary objection by failing to raise it in the

---

[6] (See *Clark*, *supra*, 63 Cal.4th at 618-623; *In re Miller* (2017) 14 Cal.App.5th 960, 964-965, 975-977; *Scoggins*, *supra*, 9 Cal.5th 667, 676-683.)

trial court.  (See Evid. Code, § 353, subd. (a); *People v. Stevens* (2015) 62 Cal.4th 325, 333.)  Here, the trial court explicitly recognized that Ricardo's statements were hearsay and found them admissible after identifying several indicia of reliability.  Gomez did not then object.  At the time of the evidentiary hearing, former section 1170.95 did not explicitly address the admissibility of hearsay, as section 1172.6 now does.  (See former § 1170.95, subd. (d)(3).)  But courts had already interpreted former section 1170.95 to allow the admission of hearsay evidence only if the court found a substantial basis for believing the hearsay evidence was reliable.  (See *People v. Williams* (2020) 57 Cal.App.5th 652, 659-662, review denied Feb. 10, 2021.)  Gomez's reliance on *People v. Perez* (2020) 9 Cal.5th 1 and *People v. French* (2008) 43 Cal.4th 36 to explain away his failure to object is accordingly unavailing.  (*People v. Perez, supra*, 9 Cal.5th at 5-9, 14 [defendant did not forfeit objection that would have been futile under then-binding precedent]; *People v. French, supra*, 43 Cal.4th at 40-41, 46-48 [defendant did not forfeit jury trial right that had yet to be recognized by the courts].)  We conclude that the invited error and forfeiture doctrines bar Gomez's hearsay objection on appeal.  (See *People v. Tran* (2022) 13 Cal.5th 1169, 1213-1214.)

### C. Defense Counsel's Decision to Offer Ricardo's Out-of-Court Statements to Support Gomez's Resentencing Petition Did Not Amount to Ineffective Representation

18

Gomez contends that, if we conclude the trial court did not err in considering Ricardo's hearsay statements, we should also conclude Gomez was prejudiced by constitutionally ineffective representation by counsel who put the statements before the trial court. Because we conclude the statements were admissible and the decision to offer them was neither unreasonable nor prejudicial to Gomez, his constitutional claim fails.

Evidence Code section 1230 provides that the out-of-court declaration of an unavailable witness may be admitted for its truth if the statement, when made, was so far against the declarant's interests, penal or otherwise, that a reasonable person would not have made the statement unless he or she believed it to be true.[7] "[T]he against-interest exception does not require courts to sever and excise any and all portions of an otherwise inculpatory statement that do not 'further incriminate' the declarant." (*People v. Grimes* (2016) 1 Cal.5th 698, 716-717.) Here, Ricardo acted against his penal interests in admitting his role in the robbery and Cruz's death, one of several reasons why the trial court concluded the statements were reliable. Ricardo also inculpated Gomez, stating Gomez suggested the robbery to Ricardo, demanded and took Cruz's property while Ricardo held Cruz at gunpoint, walked with Ricardo around

---

[7] Ricardo was deemed unavailable as a witness at Gomez's trial after Ricardo asserted his Fifth Amendment right to refuse to testify. Gomez appears to concede Ricardo was "legally unavailable to testify" in the resentencing proceedings as well.

the car to the vantage point where Ricardo fired, and fled with Ricardo. But these descriptions of Gomez's conduct merely provided context for Ricardo's self-inculpatory admissions, without portraying Gomez as the more culpable actor or otherwise attempting to shift the blame. (See *People v. Almeda* (2018) 19 Cal.App.5th 346, 364 ["statements by a nontestifying codefendant that implicate the defendant, even by name, may be admissible if they are disserving to the codefendant's interest and are not exculpatory, self-serving, or collateral"]; *People v. Arredondo* (2018) 21 Cal.App.5th 493, 508 [trial court acted within its discretion in admitting, as declaration against interest, accomplice's statement to cellmate that accomplice shot victim and then defendant slit victim's throat].)

We also reject Gomez's argument that the admission of Ricardo's statements violated Gomez's confrontation and due process rights. It appears to be beyond dispute that the right to confront witnesses does not apply in resentencing proceedings. (See *People v. James* (2021) 63 Cal.App.5th 604, 610, review denied July 14, 2021.) With respect to due process, Gomez forfeited the issue by failing to raise it in his opening brief. (See *People v. Silveria and Travis* (2020) 10 Cal.5th 195, 255.) In any event, because we conclude there were sufficient indicia of reliability for Ricardo's statements to be admissible, we further conclude Gomez has likewise failed to show their admission violated his due process rights. (See *People v. Dalton* (2019) 7 Cal.5th 166, 209.)

To demonstrate constitutionally deficient performance of counsel, Gomez bears the burden of showing that counsel's performance "'fell below an objective standard of reasonableness . . . under prevailing professional norms'" and that he suffered prejudice as a result of the deficient performance. (*People v. Mickel* (2016) 2 Cal.5th 181, 198.) To demonstrate prejudice, Gomez must show "a reasonable probability that, but for counsel's deficient performance, the outcome of the proceeding would have been different." (*Ibid.*)

Here, defense counsel reasonably could have determined, as we have, that Ricardo's out-of-court statements were admissible. (See *People v. Seumanu* (2015) 61 Cal.4th 1293, 1313.) Counsel, in light of the trial judge's comment that the merits of the petition might "turn[] on" the identity of the actual killer, could have made a reasonable tactical decision to offer the statements to support an argument that Gomez was not the actual killer. Even if this were not the case, Gomez would be unable to show prejudice in light of our conclusion that, even without Ricardo's statements, substantial evidence supported the trial court's denial of Gomez's petition.

## DISPOSITION

The order denying Gomez's petition for resentencing is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


SCADUTO, J. [*]


We concur:


COLLINS, Acting P.J.


CURREY, J.

---

[*]    Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to Article VI, section 6, of the California Constitution.