Filed 6/28/13; pub. order 7/19/13 (see end of opn.)

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E056019 |
| v. | (Super.Ct.No. RIF10006127) |
| BRYAN LEE DAVIS, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County. Thomas E. Kelly, Judge. (Retired judge of the Santa Cruz Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.) Affirmed.

Anthony J. Dain, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Melissa Mandel and Warren Williams, Deputy Attorneys General, for Plaintiff and Respondent.

1

A jury found defendant and appellant Bryan Lee Davis (defendant) guilty as charged of first degree murder in connection with the death of his mother (Pen. Code, § 187, subd. (a)),[1] and also found true the special allegation that in the commission of that crime defendant discharged a firearm causing great bodily injury or death (§ 12022.53, subd. (d)). The trial court sentenced defendant to serve a term of 25 years to life in state prison on the first degree murder conviction and a consecutive term of 25 years to life on the firearm enhancement.

Defendant raises one issue in this appeal. He contends the trial court committed reversible error by failing to instruct the jury sua sponte that the testimony of a so-called jailhouse informant must be corroborated. We agree the trial court erred, but conclude the error was harmless in this case. Therefore, we will affirm the judgment.

**FACTS**

Resolution of the issue defendant raises in this appeal does not depend on the facts of the underlying crime. Moreover, the facts are undisputed and are set out at length in the parties' respective briefs. For our purpose it is sufficient to note that on December 10, 2010, defendant reported his mother's death to the funeral director of the mortuary with which she had a burial contract. The funeral director realized from his conversation with defendant that defendant's mother had not been under the care of a physician at the time of her death, so he contacted the police to report the death as unattended. The fire

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

department responded to that report by going to defendant's home. Defendant directed them down a hall where they found defendant's mother on the floor of a bedroom.

An autopsy revealed defendant's mother had been shot three times in the torso, and stabbed.[2] The gunshot wounds indicated the shooter had fired at a downward angle, which suggested the mother had been sitting in a chair when the gunman fired. The autopsy also revealed, based on the condition of the corpse, that defendant's mother had been dead for at least 24 hours and as long as several days before defendant reported her death. Three .38-caliber bullets were removed from the body of defendant's mother during the autopsy.

While in jail after his arrest, defendant told Jeffrey Cristillo, a fellow inmate, he had killed his mother. Defendant explained that he had endured years of verbal abuse from his mother. He finally lost control and shot her three times in the chest while she was sitting in her easy chair. Defendant then dragged her body into the bedroom where he left it for five days before calling anyone to report her death.[3] Defendant also told Cristillo that he had shot his mother with her own gun, a .38 special, and that he had disposed of the gun. A month after defendant talked to him, Cristillo was released from jail after serving 45 days in custody for his third DUI. He contacted an investigator at the

---

[2] A triangular shaped burn mark on her back also suggested she had been burned with a clothes iron.

[3] The deputy coroner who examined the mother's body while it was still on the floor in her bedroom noted that the legs of her pajama pants were bunched up at the knees and her bathrobe was bunched up around her waist, which suggested the body had been dragged or pulled into the bedroom.

district attorney's office.  Cristillo testified at trial.  He confirmed in his testimony that he had not received any promises or benefits in exchange for testifying at trial.

Defendant's next door neighbor, Ginger,[4] began a friendship with him after he went to jail.  The two communicated regularly; defendant asked Ginger, among other things, to help him get an attorney, and to cash out his life insurance policy.  Their friendship evolved into a romantic relationship, despite defendant's incarceration.  In the course of their conversations defendant repeatedly told Ginger that he hated his mother because she had been abusive to him when he was a child.  At trial Ginger testified that defendant never admitted to her that he killed his mother, and if she told the district attorney's investigator that defendant had, she misspoke.

Sean Murphy, the district attorney's investigator who interviewed Ginger about defendant, testified at trial that he asked her, "Has he ever talked to you about why the incident with his mom occurred?"  Ginger responded, "Um, yeah he hated her.  I mean that's all he ever told me and I thought well that's sure not in your best interest to tell me that."  The prosecutor played for the jury the above quoted snippet from Investigator Murphy's tape-recorded interview of Ginger.

Defendant testified at trial, in pertinent part, that he lived with his mother and found her lying on the floor of her bedroom on the evening of December 10, 2010.  She had been in her room with the door closed all day because she had not been feeling well, and defendant had been in and out of the house during the day.  Defendant also denied

---

**4** We use the witness's first name in order to avoid confusion because, although she is not related to defendant, her last name is Davis.

that he was friends with Cristillo. Additional facts pertinent to our resolution of the issue defendant raises in this appeal will be recounted below.

## DISCUSSION

Defendant's only claim is that the trial court committed reversible error because it did not instruct the jury that the testimony of an in-custody informant must be corroborated. The corroboration requirement is set out in section 1111.5, which went into effect on January 1, 2012,[5] and states, "(a) A jury or judge may not convict a defendant, find a special circumstance true, or use a fact in aggravation based on the uncorroborated testimony of an in-custody informant. The testimony of an in-custody informant shall be corroborated by other evidence that connects the defendant with the commission of the offense, the special circumstance, or the evidence offered in aggravation to which the in-custody informant testifies. Corroboration is not sufficient if it merely shows the commission of the offense or the special circumstance or the circumstance in aggravation. Corroboration of an in-custody informant shall not be provided by the testimony of another in-custody informant unless the party calling the in-custody informant as a witness establishes by a preponderance of the evidence that the in-custody informant has not communicated with another in-custody informant on the subject of the testimony. [¶] (b) As used in this section, 'in-custody informant' means a person, other than a codefendant, percipient witness, accomplice, or coconspirator, whose testimony is based on statements allegedly made by the defendant while both the

---

[5] Defendant's trial took place in February 2012.

5

defendant and the informant were held within a city or county jail, state penal institution, or correctional institution. Nothing in this section limits or changes the requirements for corroboration of accomplice testimony pursuant to Section 1111."

It is undisputed that defendant and Jeffrey Cristillo were housed together in county jail at the time defendant told Cristillo he was in jail because he had killed his own mother. Therefore, it is undisputed that Cristillo was an in-custody informant. It is also undisputed that the trial court did not instruct the jury on the legal principle set out in section 1111.5, although the court had a sua sponte duty to do so. (*People v. Breverman* (1998) 19 Cal.4th 142, 154 [the trial court must instruct on general principles of law relevant to the issues raised by the evidence].)[6] Consequently, the trial court erred.

The remaining issue we must resolve is whether that error was prejudicial. The Attorney General argues that in assessing prejudice, all we need determine is whether there is sufficient corroborating evidence. "Sufficient corroborating evidence" is the standard of prejudice that applies in accomplice cases when the trial court fails to instruct on the corroboration requirement. (See *People v. Gonzales and Soliz* (2011) 52 Cal.4th 254, 303 ["'A trial court's failure to instruct on accomplice liability under section 1111 is harmless if there is sufficient corroborating evidence in the record'"].) Defendant contends that corroboration for purposes of this section is more stringent than the corroboration required for accomplice testimony under section 1111 because that section

---

[6] The trial court did instruct the jury according to CALCRIM No. 336, on the need to view the testimony of an in-custody informant with caution. However, the corroboration requirement was not added to CALCRIM No. 336 until August 2012. (See CALCRIM No. 336 (2013 Ed.).)

only requires evidence that "tend[s] to connect" the defendant with the crime, whereas section 1111.5, quoted above, requires evidence that "connects" defendant with the crime. Therefore, he argues that prejudice should be assessed under *People v. Watson* (1956) 46 Cal.2d 818, 836 (*Watson*). We agree with defendant.

The basic tenet of statutory construction is that its goal is to determine the Legislature's purpose or intent in enacting a law in order, in turn, to effectuate the purpose of the law. (*People v. Canty* (2004) 32 Cal.4th 1266, 1276.) To that end we "'look first to the words of the statute, giving the language its usual, ordinary meaning. If there is no ambiguity in the language, we presume the Legislature meant what it said, and the plain meaning of the statute governs.'" (*Curle v. Superior Court* (2001) 24 Cal.4th 1057, 1063.)

Section 1111.5 is not ambiguous. As quoted above, the statute requires that the corroborating evidence "connect" the defendant with the commission of the crime. Connect means "to join, or fasten together, as by something intervening." (Webster's Rev. Unabridged Dict. (1913 & 1828) p. 304.) From the use of the word connect we must conclude the Legislature intended that evidence corroborating the testimony of an in-custody informant must link or join the defendant to the commission of the crime. In our view, "connect" and "tend to connect," the phrase used in section 1111 to describe the strength of the evidence necessary to corroborate the testimony of an accomplice, do not have the same meaning, the Attorney General's contrary claim notwithstanding. Moreover, the Legislature was aware of the language used in section 1111 when it

enacted section 1111.5.[7]  Despite that awareness, the Legislature did not use that language in section 1111.5; it used "connect."  Because we must assume the Legislature meant what it said, we must conclude, for purposes of corroborating the testimony of an in-custody informant, that there must be evidence that directly connects defendant with the crime.

Because the evidence must directly connect the defendant with the crime, we conclude the sufficient corroborating evidence standard used to assess prejudice in accomplice cases does not apply in cases involving corroboration of jailhouse informants. As previously discussed, the evidence necessary to corroborate the testimony of an accomplice need only "'tend to connect'" the defendant with the commission of the crime "'in such a way as to satisfy the jury that the accomplice is telling the truth.'"  (*Ibid*.) Consequently, the corroborating evidence in an accomplice case "'may be slight, [and] may be entirely circumstantial . . . .'"  (*Ibid*.)

The standard of assessing prejudice under state law, as set out in *Watson*, *supra*, 46 Cal.2d at p. 836, should apply in cases such as this where the error involves failure to instruct the jury on the statutory requirement that the testimony of an in-custody informant must be corroborated by evidence that connects the defendant with the crime. In other words, we may reverse the judgment only if we are able to say it is reasonably

_____

[7] We do not need to engage in the usual presumption in this case.  We hereby grant respondent's request, filed December 11, 2012, that we take judicial notice of the report from the Assembly Committee on Public Safety regarding this legislation.  That report refers to the accomplice corroboration requirement that there must be evidence that "tends to connect" the defendant with the commission of the crime.  (Assem. Com. on Public Safety, Analysis of Senate Bill No. 687 (2011-2012 Reg. Sess.) June 14, 2011).

probable the jury would have reached a result more favorable to defendant if the trial court had instructed that before the jury could convict defendant based solely on the testimony of Cristillo, an in-custody informant, there must be evidence that corroborates that testimony, i.e., that connects defendant to the commission of the crime. (*Ibid.*)

There is evidence in this case that directly connects defendant with the crime of killing his mother. First, blood found on a pair of surgical scrub pants recovered from defendant's bedroom matched defendant's mother's blood. Next, Investigator Murphy testified, as recounted above, about his interview of Ginger during the course of which he asked if defendant ever told her why the incident with his mother happened. The jury heard the pertinent part of the investigator's tape-recorded interview of Ginger. According to the transcript of that recording, Investigator Murphy asked, "Has he ever talked to you about why the incident with his mom occurred?" Ginger responded, "Um, yeah he hated her. I mean that's all he ever told me and I thought well that's sure not in your best interest to tell me that. _____ I hated my parents." That evidence connects defendant with the murder of his mother and thereby corroborates the testimony of in-custody informant Cristillo.

In view of the evidence recounted above that connects defendant to the murder of his mother, which is sufficient to establish defendant's guilt without Cristillo's testimony, the error in this case was not prejudicial. In other words, it is not reasonably probable the jury would have reached a result more favorable to defendant if the trial court had instructed the jury on the need for testimony of an in-custody informant to be

9

corroborated before the jury could rely solely on that evidence to find defendant guilty.

(*Watson*, *supra*, 46 Cal.2d at p. 836.)

## DISPOSITION

The judgment is affirmed.

McKINSTER
                                                            Acting P.J.

We concur:


RICHLI
            J.


KING
          J.


10

COURT OF APPEAL -- STATE OF CALIFORNIA

FOURTH DISTRICT

DIVISION TWO

**ORDER**

| | |
|---|---|
| THE PEOPLE,<br>   Plaintiff and Respondent, | E056019 |
| | (Super.Ct.No. RIF10006127) |
| v. | |
| | The County of Riverside |
| BRYAN LEE DAVIS,<br>   Defendant and Appellant. | |

_____

THE COURT

    Appellant's request, filed July 15, 2013, for publication of a nonpublished opinion heretofore filed in the above-entitled matter on June 28, 2013, is GRANTED.  The opinion meets the standards for publication as specified in California Rules of Court, rule 8.1105(c)(1).

McKINSTER_____

Acting P.J.

We concur:

RICHLI_____

J.

KING_____

J.