Filed 7/8/24  P. v. Mabon CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>TROY DOMINIC MABON,<br><br>        Defendant and Appellant. | A165624<br><br>(Alameda County<br>Super. Ct. No. 144197)<br><br>ORDER MODIFYING OPINION<br>AND DENYING REHEARING<br><br>NO CHANGE IN JUDGMENT |

THE COURT:*

It is ordered that the opinion filed herein on June 18, 2024, be modified as follows:  On page 2, footnote 2, the words "and the record on appeal" are inserted after the word "opinion" so that the sentence reads, "We grant defendant's motion, filed on May 5, 2023, for judicial notice of our prior opinion and the record on appeal in *Mabon I, supra*, A109378."

There is no change in the judgment.

Appellant's petition for rehearing is denied.

Dated:  _____07/08/2024_____        _____Jackson, P.J._____, P. J.

---

* Jackson, P. J.; Simons, J.; Burns, J.

1

Filed 6/18/24  P. v. Mabon CA1/5 (unmodified opinion)
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br>v.<br>TROY DOMINIC MABON,<br><br>        Defendant and Appellant. | A165624<br><br><br>(Alameda County<br>Super. Ct. No. 144197) |

This is an appeal from a postjudgment resentencing order denying the request of defendant Troy Mabon to strike a firearm enhancement pursuant to Penal Code sections 1385, as amended by Senate Bill No. 81 (2021–2022 Reg. Sess.) (Senate Bill 81), and 12022.53, as amended by Senate Bill No. 620 (2017–2018 Reg. Sess.) (Senate Bill 620).[1]  Defendant, convicted of first degree murder in 2004, contends this ruling was an abuse of the trial court's discretion for several reasons, including that the court misinterpreted section 1385, relied on improper facts, and failed to consider applicable mitigating factors.  We affirm.

---

    [1] Unless otherwise stated, all statutory citations herein are to the Penal Code.

1

## FACTUAL AND PROCEDURAL BACKGROUND

This case is before us on appeal for the third time. In the name of judicial efficiency, we decline to restate the full factual and procedural background. Instead, we refer our readers to our prior nonpublished opinions (*People v. Mabon* (Oct. 24, 2006, A109378) (*Mabon I*); *People v. Mabon* (May 19, 2021, A159361) (*Mabon II*)), which together provide this information.[2]

Briefly, in 2004 a jury convicted defendant, then 23 years old, of: (1) first degree murder (Pen. Code, § 187, subd. (a); count 1) with an enhancement for personally and intentionally discharging a firearm causing death (Pen. Code, § 12022.53, subds. (c), (d)); (2) possession of a firearm by a felon (former Pen. Code, § 12021, subd. (a)(1); count 2); and (3) evading a police officer (Veh. Code, § 2900.2, subd. (a); count 4). Defendant was sentenced to 51 years 4 months to life in prison, comprised of an indeterminate term of 25 years to life on count 1 plus a consecutive 25-year term on the firearm enhancement, and consecutive determinate terms of eight months each for counts 2 and 4. This court affirmed the conviction in *Mabon I* after defendant appealed on instructional grounds.

In 2019, the trial court purported to amend the abstract of judgment to correct certain sentencing errors, resulting in a reduced sentence of 50 years to life. After defendant appealed, this court concluded in *Mabon II* that the trial court imposed an unauthorized sentence and reversed and remanded the matter for a full resentencing.

On May 31, 2022, the trial court resentenced defendant to 50 years to life, comprised of 25 years to life for count 1 and 25 years for the firearm

---

[2] We grant defendant's motion, filed on May 5, 2023, for judicial notice of our prior opinion in *Mabon I, supra*, A109378.

enhancement, with concurrent determinate terms on counts 2 and 4. In doing so, the trial court denied defendant's request under recently amended sections 1385 and 12022.53 to strike the firearm enhancement after concluding aggravating circumstances in the case outweighed mitigating circumstances. This timely appeal followed.

## DISCUSSION

Defendant contends the trial court abused its discretion under section 1385 in declining to strike the firearm enhancement by: (1) relying exclusively on the facts underlying his murder conviction without considering his current dangerousness; (2) misinterpreting the mitigating circumstance delineated in section 1385, subdivision (c)(2)(C); (3) relying on uncredible testimony from an in-custody informant in violation of section 1111.5; (4) relying on facts in the supplemental probation report and our *Mabon I* opinion without assessing whether each fact had sufficient evidentiary weight; and (5) failing to consider his youth as a mitigating circumstance. In addition, defendant contends the trial court's multiple errors were cumulatively prejudicial. We set forth the governing law before turning to each claim.

### I.    *Legal Framework.*

"Section 1385 provides that a court may, 'in furtherance of justice, order an action to be dismissed.' (*Id.*, subd. (a).) Though section 1385 literally authorizes the dismissal of 'an action,' it has been construed to permit the dismissal of parts of an action [citation], including a weapon or firearm use enhancement [citations]. Further, the statute's application is broad: 'Section 1385 permits dismissals in the interest of justice in any situation where the Legislature has not clearly evidenced a contrary intent.' " (*People v. Tirado* (2022) 12 Cal.5th 688, 696 (*Tirado*).)

3

On January 1, 2018, while defendant was incarcerated, Senate Bill 620 went into effect. Relevant here, under this bill, the following language was added to section 12022.53: "The court may, in the interest of justice pursuant to Section 1385 and at the time of sentencing, strike or dismiss an enhancement otherwise required to be imposed by this section." (§ 12022.53, subd. (h); Stats. 2017, ch. 682.) This statutory framework also permits a court to strike the section 12022.53, subdivision (d) enhancement found true by the jury and to impose a lesser included, uncharged statutory enhancement authorized under section 12022.53 or elsewhere in the Penal Code. (*Tirado, supra*, 12 Cal.5th at pp. 692, 696, 702; *People v. McDavid* (2024) 15 Cal.5th 1015, 1021.)

The factors that guide the trial court in deciding whether to strike or lessen a section 12022.53 firearm enhancement pursuant to section 1385, subdivision (a) are the same as those factors the court must weigh in handing down a sentence in the first instance. (*People v. Pearson* (2019) 38 Cal.App.5th 112, 117 (*Pearson*); *People v. Flores* (2021) 63 Cal.App.5th 368, 377.) "These factors include those listed in California Rules of Court, rule 4.410 (general objectives in sentencing), rules 4.421 and 4.423 (circumstances in aggravation and mitigation), and rule 4.428(b) (discretion in striking an enhancement and punishment for an enhancement under § 1385). These rules refer to circumstances specific to the crime and the defendant's criminal history, as well as to broader societal objectives, such as '[d]eterring others from criminal conduct by demonstrating its consequences' and '[i]ncreasing public safety by reducing recidivism through community-based corrections programs and evidence-based practices.' (Cal. Rules of Court, rule 4.410(a)(4), (8).) The rules state the trial court 'should be guided by statutory statements of policy, the criteria in [the Rules of Court], and any other facts

4

and circumstances relevant to the case.' (*Id.*, rule 4.410(b).)" (*Nazir v. Superior Court* (2022) 79 Cal.App.5th 478, 497; accord, *People v. Parra Martinez* (2022) 78 Cal.App.5th 317, 322.)

On January 1, 2022, approximately five months before defendant's resentencing hearing, Senate Bill 81 went into effect. (Stats. 2021, ch. 721, § 1.) This bill, among other things, amended section 1385 to provide further guidance for a trial court deciding whether to strike an enhancement. Relevant here, new language in section 1385, subdivision (c) provides: "(1) Notwithstanding any other law, the court shall dismiss an enhancement if it is in the furtherance of justice to do so, except if dismissal of that enhancement is prohibited by any initiative statute. [¶] (2) In exercising its discretion under this subdivision, the court shall consider and afford great weight to evidence offered by the defendant to prove that any of the mitigating circumstances in subparagraphs (A) to (I) are present. Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety." Defendant contends one of these mitigating circumstances exists here: "(C) The application of an enhancement could result in a sentence of over 20 years. In this instance, the enhancement shall be dismissed." (§ 1385, subd. (c)(2)(C).)

Thus, the provisions of section 1385, "taken together, explicitly and unambiguously establish[]: the trial court has discretion to dismiss sentencing enhancements; certain circumstances weigh greatly in favor of dismissal; and a finding of danger to public safety can overcome the circumstances in favor of dismissal." (*People v. Anderson* (2023) 88 Cal.App.5th 233, 239, review granted Apr. 19, 2023, S278786; *People v. Mendoza* (2023) 88 Cal.App.5th 287, 296 ["if the court finds that dismissal of

5

an enhancement 'would endanger public safety,' then the court need not consider the listed mitigating circumstances"].)

On appeal, we generally review a trial court's sentencing decision for abuse of discretion, meaning we affirm if the court exercised its discretion "in a manner that is not arbitrary and capricious, that is consistent with the letter and spirit of the law, and that is based upon an 'individualized consideration of the offense, the offender, and the public interest.' " (*People v. Sandoval* (2007) 41 Cal.4th 825, 847.) Under this standard, " ' "[d]efendants are entitled to sentencing decisions made in the exercise of the 'informed discretion' of the sentencing court. [Citations.] A court which is unaware of the scope of its discretionary powers can no more exercise that 'informed discretion' than one whose sentence is or may have been based on misinformation regarding a material aspect of a defendant's record." [Citation.] In such circumstances, we have held that the appropriate remedy is to remand for resentencing unless the record "clearly indicate[s]" that the trial court would have reached the same conclusion "even if it had been aware that it had such discretion." ' " (*People v. Salazar* (2023) 15 Cal.5th 416, 424.)

## II. *Application of the Law to the Facts.*

At defendant's resentencing hearing, the trial court identified a variety of facts based on its review of the record, including the recently filed supplemental probation report and our *Mabon I* opinion, that it deemed significant. The court first noted defendant shot the victim four times in the head after "verbally challeng[ing] him" and despite the victim's begging for his life. The court also noted "a theme running through the facts in this case of witness intimidation and witness threats." Finally, the court referred to evidence that defendant committed additional shootings "related to a person named Timothy Curry." The court then walked through aggravating

6

circumstances identified in California Rules of Court, rule 4.421,[3] and mitigating circumstances identified in both rule 4.423 and newly amended section 1385, subdivision (c), before ultimately determining aggravating circumstances predominated.

Specifically, the court found the following 10 aggravating circumstances supported by the record: (1) defendant's crime involved great bodily injury and evidenced a high degree of cruelty and callousness (rule 4.421(a)(1)); (2) defendant used a gun to commit his crime (rule 4.421(a)(2)); (3) the victim was particularly vulnerable, as he was socializing with friends when defendant shot him (rule 4.421(a)(3)); (4) defendant threatened witnesses or otherwise illegally interfered with the judicial process (rule 4.421(a)(6)); (5) defendant was convicted of other crimes for which consecutive sentences could have been, but were not, imposed (rule 4.421(a)(7)); (6) the crime was carried out in a manner indicating planning, sophistication, or professionalism (rule 4.421(a)(8)); (7) defendant engaged in violent conduct indicating a serious danger to society (rule 4.421(b)(1)); (8) defendant's prior convictions or sustained juvenile petitions were numerous or of increasing seriousness (rule 4.421(b)(2)); (9) defendant was on probation at the time of the crime (rule 4.421(b)(4)); and (10) defendant's prior performance on probation was poor (rule 4.421(b)(5)).[4]

With respect to mitigating circumstances under rule 4.423, the trial court found just one applicable, to wit, defendant had a mostly insignificant criminal record prior to committing this crime (rule 4.423(b)(1)).

---

[3] Unless otherwise stated, all rule citations herein are to the California Rules of Court.

[4] The court also found defendant may have taken advantage of a position of trust or confidence "if [he and the victim] were friends." (Rule 4.421(a)(11).)

Lastly, the trial court found no applicable mitigating circumstances under section 1385, subdivision (c)(3)(A)–(I).  As such, the court was not required to, and did not, make a finding that dismissing the enhancement would "endanger public safety" before reimposing it.  (§ 1385, subd. (c)(2).)

This record, we conclude, demonstrates the trial court considered the appropriate factors and exercised its discretion in a reasonable manner in declining to strike or lessen the firearm enhancement.  (*Pearson, supra*, 38 Cal.App.5th at p. 118.)

### A.     Consideration of Current Dangerousness.

Defendant claims the trial court abused its discretion under section 1385 by relying exclusively on the facts underlying his murder conviction without considering his current dangerousness.  Even assuming for the sake of argument the court was required to consider this factor, the record belies his contention.  (See *People v. Mendoza, supra*, 88 Cal.App.5th at p. 299 [the statutory language of § 1385, subd. (c) does not require the trial court to consider any particular factors in determining whether dismissal of the enhancement would endanger public safety].)[5]

In a letter filed in anticipation of the resentencing hearing, the district attorney's office informed the trial court that it "must consider the defendant's post-sentencing conduct" in exercising its discretion to strike an enhancement under section 12022.53, subdivision (h), citing *People v. Yanaga* (2022) 58 Cal.App.5th 619.  As such, this letter described defendant's rehabilitative conduct while incarcerated, including his educational endeavors, positive programming and efforts to help steer inmates away from

---

[5] As stated *ante* (p. 8), the trial court did not make a finding that dismissing the enhancement would "endanger public safety" because it found that none of the mitigating circumstances delineated in section 1385, subdivision (c)(2) applied.

gang activity. This letter also mentioned that defendant received a new felony conviction while in prison for possession of a controlled substance that resulted in an additional two-year term.

The supplemental probation report, prepared in May 2022, provided even more detail regarding defendant's postsentencing conduct. According to this report, "defendant has made tremendous strides in preparation for the day he will be awarded his freedom. Since his incarceration, [defendant] has amassed an impressive resume . . . earn[ing] two college degrees and start[ing] multiple businesses and non-profit organizations particularly geared toward rehabilitating youth."[6]

This report also noted defendant, when interviewed in May 2022, maintained his innocence and claimed to have been set up for a crime he did not commit. Defendant insisted he was unfairly treated by an unjust system and that exonerating evidence was withheld from the jury.

At the resentencing hearing, the trial court acknowledged defendant's postsentencing conduct, noting "the probation report does a very good job of describing Mr. Mabon's productive and positive things that he's done in prison." The court also pointed to defendant's drug conviction in prison, adding, "I understand that had to do with a level of depression that you were dealing with, and it looks like you have managed that in terms of addressing that issue as well." Ultimately, however, the trial court decided to reimpose the full enhancement because the aggravating circumstances greatly outweighed the mitigating circumstances. The court's conclusion that

---

[6] Defendant earned associate of arts degrees in personal finance and business administration and paralegal studies, and was currently working on a bachelor of arts degree in personal finance and business administration as well as a degree in child psychology. Defendant also worked as a certified paralegal and an entrepreneur.

9

dismissing the enhancement would not be "in furtherance of justice" (§ 1385, subd. (a)), after considering the appropriate factors, was within the scope of its broad discretion.

**B.     Interpretation of Section 1385, Subdivision (c)(2)(C).**

Defendant also contends the trial court abused its discretion by misinterpreting section 1385, subdivision (c)(2)(C), the mitigating circumstance added by Senate Bill 81 that applies where "application of an enhancement could result in a sentence of over 20 years."  His contention raises a question of statutory interpretation reviewed de novo on appeal. (*Tirado, supra*, 12 Cal.5th at p. 694.)

" ' "When we interpret a statute, '[o]ur fundamental task . . . is to determine the Legislature's intent so as to effectuate the law's purpose.  We first examine the statutory language, giving it a plain and commonsense meaning. . . .  If the language is clear, courts must generally follow its plain meaning unless a literal interpretation would result in absurd consequences the Legislature did not intend.  If the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy.' [Citation.] 'Furthermore, we consider portions of a statute in the context of the entire statute and the statutory scheme of which it is a part, giving significance to every word, phrase, sentence, and part of an act in pursuance of the legislative purpose.' " ' " (*People v. Reynoza* (2024) 15 Cal.5th 982, 989–990.)

The trial court found this mitigating circumstance did not apply because "the base charge [for murder] is over 20 years, and the enhancement does not cause that sentencing number to cross the 20-year mark."  We agree. Section 1385, subdivision (c)(2)(C) unambiguously applies if "application of an enhancement could result in a sentence of over 20 years."  The usual and

ordinary meaning of the phrase "result in" is "to cause (something) to happen" or "to produce (something) as a result." (Merriam-Webster Collegiate Dict. <http://unabridged.merriam-webster.com/collegiate/result%20in> [as of June 11, 2024]; see *Hall v. Time* (2008) 158 Cal.App.4th 847, 855 [The phrase "as a result of" in its plain and ordinary sense means 'caused by' and requires a showing of a causal connection or reliance"].) Here, imposition of the firearm enhancement did not cause or produce a sentence over 20 years because defendant's sentence for the murder charge already exceeded 20 years.

Defendant argues "the Legislature's intent was for the statute to apply in any case involving a sentence of over 20 years, not just in cases where the sentence would be under 20 years absent the enhancement." His interpretation, if accepted, would write the phrase "result in" out of section 1385, subdivision (c)(2)(C), since it would obviate the need for a causal link between the enhancement and a sentence of over 20 years. While we agree with defendant the statute was enacted for the purpose of limiting unduly lengthy sentences, we cannot adopt an interpretation that supports the statute's purpose yet nullifies its actual language. (*City of Emeryville v. Cohen* (2015) 233 Cal.App.4th 293, 304 [" ' "If possible, significance should be given to every word, phrase, sentence and part of an act in pursuance of the legislative purpose . . . " [citation]; "a construction making some words surplusage is to be avoided" ' "].)

Where, as here, there is no ambiguity in the language, we presume the Legislature meant what it said and need not resort to extrinsic aids such as

11

the legislative history or public policy.[7]  (*People v. Snook* (1997) 16 Cal.4th 1210, 1215; *People v. Reynoza, supra*, 15 Cal.5th at pp. 989–990.)

## C.     Reliance on In-custody Informant Testimony.

Next, defendant contends the trial court abused its discretion by giving significant weight to the testimony of Jamall Baker, an in-custody informant, in relying on certain aggravating factors.  (See *In re White* (2020) 9 Cal.5th 455, 470 [trial court abuses its discretion when it "gives significant weight to an irrelevant or impermissible factor"].)  Section 1111.5, which took effect after defendant's trial but before his resentencing hearing, prohibits a court from using a fact in aggravation based on the testimony of an in-custody informant unless the testimony is "corroborated by other evidence that connects the defendant with . . . the evidence offered in aggravation to which the in-custody informant testifies."  (§ 1111.5, subd. (a).)  This corroboration "is not sufficient if it merely shows the commission of the offense or the special circumstance or the circumstance in aggravation."  (*Ibid.*)

The trial court relied on Baker's testimony in finding two of the 10 aggravating circumstances:  defendant threatened witnesses or otherwise illegally interfered with the judicial process (rule 4.421(a)(6)) and his crime was carried out in a manner indicating planning, sophistication, or professionalism (rule 4.421(a)(8)).  In doing so, the court did not violate section 1111.5 because Baker's testimony was sufficiently corroborated by other evidence in the record.

First, under rule 4.421(a)(6), the court referred to Baker's testimony that defendant asked him to deliver a letter to his cousin with instructions to

---

[7] We deny the People's motion, filed on August 25, 2023, for judicial notice of the legislative history of Senate Bill 81.

kill witnesses[8] and told him that defendant planned to have his mother and sister falsely testify in his defense that he was in Sacramento during the murder. Other evidence in the record supports Baker's claims that defendant had plans to undermine the judicial process in his case, even if violence was required. For example, Ana F., the victim's girlfriend who was at the murder scene, testified that shortly after the murder, defendant drove by her workplace, made eye contact with her, and nodded his head at her. Ana was scared because, although she did not see him shoot the victim, she thought that he was after her because of what she knew. Thereafter, when Ana and her two friends were driving to the victim's candlelight vigil, they were chased by someone at high speeds for several blocks. At the preliminary hearing, Ana identified defendant as the driver. However, at trial, Ana testified that she could not clearly see the driver.

The supplemental probation report also described this car chase, stating that about three weeks after the murder, "defendant engages in a high speed chase of Witnesses #1 and #3 who were driving together through East Oakland. The chase lasts approximately 15–20 minutes and ends when the witnesses arrive at a highly populated location of a candlelight vigil."

Similarly, eyewitness N.T. (aka Pua) testified that as she ran away from the shooting, defendant caught up to her and warned that she " 'was lucky that he had love for [her] because he would have killed [her] too' " and that he also would have killed her sister, L.M. (aka Weezy). And N.W., who

---

[8] The letter defendant purportedly gave Baker in jail was admitted as a trial exhibit. According to *Mabon I*, while this letter was not in the appellate record, "defense counsel quoted it as saying ' "She in the 50's on 51st and Bancroft or on 52nd and Wentworth, they're the only place she can be." ' Sergeant Nolan testified that the letter said nothing about appellant's suggesting that anybody be killed." (*Mabon I, supra*, A109378.)

was interviewed by the police after volunteering information about the case, told officers that defendant told her he murdered someone. N.W. also told them defendant had "tattoos of bullets [on his forearms], of all the murders he said he did," and that he warned her, " 'This is where you'll be at if you talk to anybody. . . . You'll be another bullet. You and your baby."

The trial court mentioned all of this evidence, not just Baker's testimony, in finding the aggravating circumstance under rule 4.421(a)(6) applicable.

Second, under rule 4.421(a)(6), the court found that defendant committed the murder in a manner indicative of planning, professionalism, or sophistication. In doing so, the court referenced Baker's testimony that defendant told him defendant killed the victim because his uncle had placed a "contract" on the victim's life. However, this was not the only such evidence. As the court further noted, "essentially, [defendant] located the victim; and in the darkness of the night, approached the victim, shot him once, followed by several other shots to ensure that the killing was full and complete." This was consistent with the supplemental probation report, which stated that defendant told the victim before repeatedly shooting him, " 'I caught your bitch-ass slippin,' suggesting he had been waiting for an opportunity to accost the victim."

As this record reflects, the trial court did not violate section 1111.5 because there was other evidence connecting defendant to the aggravating factors under rule 4.421(a)(6) and (a)(8) that corroborated Baker's testimony. (See *People v. Davis* (2013) 217 Cal.App.4th 1484, 1491 [court's failure to instruct the jury on the corroboration requirements of § 1111.5 was harmless error because other evidence "connect[ed] defendant with the murder . . . and thereby corroborate[d] the testimony of [the] in-custody informant"].)

14

### D. Reliance on Facts in the Appellate Opinion and Supplemental Probation Report.

Defendant's next two claims are related. He contends the trial court: (1) abused its discretion by relying on aggravating facts taken from the supplemental probation report and *Mabon I* without independently assessing whether each such fact was established by a preponderance of the evidence and (2) violated his due process rights by relying on aggravating facts that were not supported by substantial evidence. The aggravating facts to which he refers are: (1) the statement in the supplemental probation report that he engaged in a lengthy car chase of Ana F. and Weezy on the day of the victim's vigil and (2) Baker's testimony regarding defendant's purported incriminating jailhouse statements (*ante*, pp. 12–14). We conclude the trial court appropriately used these facts.

The California Supreme Court has long held that a sentencing judge may consider, in addition to evidence produced at trial, " 'responsible unsworn or "out-of-court" information relative to the circumstances of the crime and to the convicted person's life and characteristics.' " (*People v. Arbuckle* (1978) 22 Cal.3d 749, 754 (*Arbuckle*); accord, *People v. Peterson* (1973) 9 Cal.3d 717, 725 ["Once guilt has been determined, evidence which would be inadmissible on the issue of guilt may nevertheless be received as bearing on the punishment to be imposed."].) Consistent with this rule, section 1170 authorizes the court to consider for sentencing purposes "the record in the case, the probation officer's report, other reports, including reports received pursuant to Section 1203.03, and statements in aggravation or mitigation submitted by the prosecution, the defendant, or the victim, or the family of the victim if the victim is deceased, and any further evidence introduced at the sentencing hearing." (§ 1170, subd. (b)(4); accord, rule 4.437(d).)

15

As the California Supreme Court explains, a probation report "has inherent reliability because it was made pursuant to a court order by expert, objective government personnel in pursuit of their official duties." (*Arbuckle, supra*, 22 Cal.3d at p. 755; accord, *People v. Sledge* (2017) 7 Cal.App.5th 1089, 1096–1097 [statements in court-ordered probation report were "sufficiently reliable hearsay to be admissible"].)  Indeed, a probation report is required following every felony conviction where the defendant is eligible for probation and must be read and considered by the sentencing judge.  (*People v. Stevens* (2015) 62 Cal.4th 325, 335; *People v. Otto* (2001) 26 Cal.4th 200, 212.) Likewise, "if the resentencing court has discretion to alter the length of the defendant's imprisonment, it must obtain a new, updated probation report, including information regarding the defendant's behavior while incarcerated during the pendency of any appeal, before proceeding with the resentencing . . . ." (*People v. Yanaga, supra*, 58 Cal.App.5th at pp. 625–626, italics omitted.)  " 'The Legislature does not require trial court judges to read and consider "unreliable" documents as a prerequisite to the imposition of sentence.' " (*People v. Otto, supra*, 26 Cal.4th at pp. 212–213.)

In addition to its inherent reliability, defendants have a statutory right to review a presentence probation report and challenge any alleged inaccuracies. (*People v. Otto, supra*, 26 Cal.4th at p. 212, citing §§ 1170, subd. (b), 1203, subd. (b)(2)(D), 1203d; rule 4.437(e).)  Defendant does not dispute that he was afforded an opportunity to review the supplemental probation report and could have, but did not, challenge the accuracy of any fact contained therein.  Where, as here, "the defendant has had an opportunity to review the postplea probation report and challenge its contents, including its statement of the facts and circumstances of the offense, the trial court is entitled to consider the information in that report"

in making a discretionary sentencing choice not to reduce the defendant's sentence. (See *People v. Tran* (2015) 242 Cal.App.4th 877, 889–890 [distinguishing cases involving "the establishment of facts necessary to impose an increased punishment, [rather than] the consideration of facts to reduce sentence"]; see also *People v. Welch* (1993) 5 Cal.4th 228, 234 [failure to object and make an offer of proof at the resentencing hearing concerning alleged errors or omissions in probation report waived claim on appeal].)

An appellate opinion bears similar hallmarks of reliability. "[A]ppellate opinions, in general, are part of the record of conviction that the trier of fact may consider in determining whether a conviction qualifies under the sentencing scheme at issue." (*People v. Woodell* (1998) 17 Cal.4th 448, 457.) Moreover, "[a]llowing consideration of the appellate opinion makes practical sense," since it "reflects what is in the trial record" and often "will be more practical to obtain . . . than the trial record, especially when the conviction is old and from a distant locale." (*Id.* at p. 456.) "It's true that when introduced at trial to prove the defendant's conduct, the contents of an appellate court opinion are subject to the ordinary rules regarding the admission of hearsay. [Citations.] However, in posttrial proceedings, statements from prior appellate opinions are admissible as reliable hearsay even if they would not be admissible at trial." (*People v. Clements* (2022) 75 Cal.App.5th 276, 291–292.)

As defendant notes, "a separate question" exists as to "[w]hether and to what extent an [appellate] opinion is probative in a specific case." (*People v. Woodell, supra*, 17 Cal.4th at p. 457.) However, defendant questions the probativeness of *Mabon I* based on its references to testimony from Baker, the in-custody informant. We have already held the portions of Baker's testimony relied upon by the trial court were sufficiently corroborated by

17

other evidence that connected defendant to the aggravating circumstances to be admissible under section 1111.5 (*ante*, pp. 12–14).

Defendant also questions the probativeness of the supplemental probation report based on its reference to defendant's engaging in a lengthy car chase of Ana F. and her friends on the day of the victim's vigil. Defendant reasons that Ana testified at trial (contrary to her preliminary hearing testimony) that she could not see the driver who chased her. Defendant insists the trial court dismissed Ana's trial testimony and deemed the information in the supplemental probation report "conclusively established."

We disagree. The trial court made clear at the sentencing hearing that it conducted "a very comprehensive review of the facts and materials in this case," including the *Mabon I* opinion. The *Mabon I* opinion not only described Ana's being followed by a car that ran a stop sign and that did not have its headlights on, it also accurately stated Ana's trial testimony that "[s]he could not see the driver." (*Mabon I, supra*, A109378.) As such, the trial court was aware that Ana changed her testimony identifying defendant as the driver of the car that chased her. Defendant directs us to no authority that precluded the trial court, after conducting a comprehensive review of the relevant record for purposes of section 1385, from relying on the information in the supplemental probation report to conclude defendant was the unidentified driver involved in the chase. (See *People v. Otto, supra*, 26 Cal.4th at pp. 212–213 ["courts routinely rely upon hearsay statements contained in probation reports to make factual findings concerning the details of the crime. These findings, in turn, guide the court's sentencing decision"].)

Defendant also cites the rule that "once a defendant is eligible for an increased penalty, the trial court, in exercising its discretion to impose that penalty, may rely on factors established by [the People by] preponderance of

18

the evidence." (*People v. Superior Court* (*Kaulick*) (2013) 215 Cal.App.4th 1279, 1305.) Here, the trial court did not rely on any factor to *increase* defendant's sentence or otherwise penalize him. Rather, after defendant sought leniency on resentencing, the court exercised its discretion to consider whether to strike the enhancement, an act that would have *reduced* his sentence.

In any event, the rule stated in *Kaulick* does not, as defendant suggests, obligate a resentencing court to apply a preponderance of the evidence standard before using an aggravating factor or obligate a reviewing court to apply a substantial evidence standard on appeal.[9] As explained in *People v. Buford* (2016) 4 Cal.App.5th 886 (*Buford*), a trial court's ultimate determination that aggravating factors outweigh mitigating factors " 'is not equivalent to a factual finding.' " (*Id.* at pp. 900–901, citing *People v. Black* (2007) 41 Cal.4th 799, 814, fn. 4 [noting a jury trial is required only on a " 'fact' " that increases the punishment for a crime beyond the statutory maximum].) As such, the court need not find that an aggravating circumstance is "more likely than not" true before relying on it to deny a resentencing petition. (See *Buford, supra*, at p. 900 [discussing a court's

_____

[9] The California Supreme Court has long held that a dismissal pursuant to section 1385 does not necessarily hinge on the sufficiency of the evidence of guilt. (*People v. Hatch* (2000) 22 Cal.4th 260, 273 ["section 1385 dismissals often are not based on the insufficiency of the evidence as a matter of law"].) Rather, the statute allows a court to dismiss an action or an enhancement in the "furtherance of justice," a standard that "is quite broad and permits dismissal under a variety of circumstances. For example, a court may dismiss under section 1385 if it believes 'the only purpose to be served by a trial or a retrial is harassment of the defendant . . . notwithstanding the fact that there is sufficient evidence of guilt, however weak, to sustain a conviction on appeal.' [Citation.] Thus, a section 1385 dismissal may not even 'involve a consideration of the merits of the cause.' " (*People v. Hatch, supra,* at p. 273, fn. omitted.)

discretion to deny a petition for rehearing under the Three Strikes Reform Act of 2012 based upon a finding the petitioner would pose an unreasonable risk of danger to public safety].) And, as stated *ante*, the court's discretionary resentencing decision is upheld on appeal so long as it does not constitute an abuse of discretion, meaning it does not exceed " 'the bounds of reason, all of the circumstances being considered. [Citations.]' " (*Buford, supra*, at p. 901.)

In reaching this conclusion, we agree with defendant that a trial court abuses its discretion by making essential factual findings that are wholly without record support. (*Buford, supra*, 4 Cal.App.5th at p. 901.) However, defendant does not claim that occurred here. He does not seriously challenge any of the 10 aggravating circumstances found true by the court in this case, including the circumstances that his crime involved great bodily injury and evidenced a high degree of cruelty and callousness (rule 4.421(a)(1)), he used a gun to commit his crime (rule 4.421(a)(2)), he threatened witnesses in an effort to subvert the judicial process (rule 4.421(a)(6)), he engaged in violent conduct indicating a serious danger to society (rule 4.421(b)(1)), and his prior performance on probation was poor and he was on probation at the time of the crimes (rules 4.421(b)(4)–(5)).[10]

For these reasons, we reject defendant's argument that the trial court abused its discretion or violated his due process rights by failing to "assess for itself" whether the facts relied upon in aggravation were established by a preponderance of the evidence or by relying on facts unsupported by substantial evidence.

---

[10] As we have discussed, defendant contends the court should not have relied on some of the facts in *Mabon I* and the supplemental probation report, but he does not argue any of the aggravating circumstances wholly lacked evidentiary support.

20

### E.    Youth as a Mitigating Factor.

Defendant also contends the trial court failed to understand, much less exercise, its discretion under section 1385, subdivision (c) to strike or impose a lesser firearm enhancement based on the fact that he was only 21 years of age when he committed the murder.  He correctly notes that rule 4.423 was amended shortly before the resentencing hearing to add as a mitigating circumstance the fact that a defendant was under age 26 at the time of the commission of the offense.  (Rule 4.423(b)(6), amended eff. Mar. 14, 2022.)  The court made no reference to this new mitigating circumstance in reimposing the enhancement.

The People respond that defendant forfeited his challenge by failing to object before the trial court under the rule set forth in *People v. Scott* (1994) 9 Cal.4th 331 (*Scott*).  Alternatively, the People contend there was no abuse of discretion, as the record supports the court's decision not to strike the enhancement.  We conclude the People's forfeiture argument need not be considered because the unambiguous record on appeal establishes there is no basis for reversal.

First, the trial court did consider defendant's age in finding none of the mitigating circumstances delineated in section 1385, subdivision (c) was applicable.  Specifically, the court found on the record that defendant was not a juvenile, but 21 years old, when he committed the offense (§ 1385, subd. (c)(2)(G)).  Further, while defendant claims the record suggests his youth was "a contributing factor in the commission of the offense," the court found no evidence the offense was connected to his childhood trauma (§ 1385, subd. (c)(2)(E)).[11]

---

[11] The same trial judge was presiding over defendant's upcoming hearing pursuant to *People v. Franklin* (2016) 63 Cal.4th 261, 283–284, and

More importantly, even assuming the trial court followed the former version of rule 4.423, we can " 'say with confidence' " the court would have reimposed the full enhancement even if it had considered defendant was under age 26 at the time of the murder.[12] (Cf. *People v. Yanaga, supra*, 58 Cal.App.5th at p. 628, quoting *Gutierrez, supra*, 58 Cal.4th at p. 1391.) The record makes clear the trial court found that it would not be "in the furtherance of justice" to dismiss or lessen the enhancement based on the multitude of aggravating circumstances (10 total) which outweighed the mitigating circumstance (one total). (§ 1385, subd. (c)(1).) Even if the court had factored in the additional circumstance that defendant was not yet 26 years old when he committed the murder, the number and severity of aggravating circumstances greatly predominated. As the court explained, "I find that the factors in aggravation outweigh the factors in mitigation. I've done, what certainly seems to me, to be a very comprehensive review of the facts and materials in this case. [¶] So that's the reason why I'm leaving the big use in place, the 12022.53(d); and as to other factors, I've noted that the probation report does a very good job of describing Mr. Mabon's productive and positive things that he's done in prison. [¶] There is the matter of the

---

reminded defendant that at the upcoming hearing he would have the opportunity to call a mitigation expert and present evidence and witnesses from his childhood to make a record of factors relevant at his future youth offender parole hearing.

[12] Defendant's reliance on *People v. Gutierrez* (2014) 58 Cal.4th 1354 (*Gutierrez*) and *People v. Ochoa* (2020) 53 Cal.App.5th 841 is misplaced. In those cases, the trial court was statutorily required under section 190.5, subdivision (b) to consider youth-related mitigating circumstances before sentencing the defendant to life without possibility of parole. (*Gutierrez, supra*, at p. 1361; *Ochoa, supra*, at pp. 850–852; see *People v. Mendoza, supra*, 88 Cal.App.5th at p. 299 [noting § 1385, subd. (c) does not require the court to consider any particular factors in exercising its discretion].)

drug conviction in prison, and I understand that had to do with a level of depression that you were dealing with, and it looks like you have managed that in terms of addressing that issue as well. [¶] So taking all of those factors into consideration, I come out by imposing the full gun enhancement at this time."

The trial court then allowed defendant to speak at length, and defendant specifically asked: "From the ruling that you made today, was there any evidence in mitigation that could have persuaded you either way, because my original trial judge . . . stated it was the intention of the Court to sentence me to 25 years to life, but he stated that he couldn't because of the mandatory sentencing laws, and his hands was tied. [¶] There's a letter from one of the jurors where he asked the judge for mercy because of my age at the time that the alleged crime was committed. I understand that I have to do time. . . . [¶] I'm asking the Court for mercy to give me a chance to go to the board a little faster than what I would have." Defendant then added, after explaining his understanding of the new sentencing rules, "So if the Court would amend the gun enhancement, take 25 years off . . . I would have been four years over the time I had to serve."

The court declined to alter its ruling and advised defendant of his right to appeal. At that point, defendant directly asked whether the trial court judge believed he was a threat to the public. The judge replied in no uncertain terms: "Absolutely. · You are absolutely a danger to society. There's no question about that in reviewing these materials. I'm 100 percent certain of that. You are guilty of this crime, which is what the paperwork says. · That's what the Court of Appeal said. That's what the jury said. · That's what the sentencing judge said. That's what the witnesses said, okay. [¶] . . . [¶] . . . Anybody who goes around chasing people, you know, on a 15-

23

minute car chase because they're witnesses to a crime, scaring the you-know-what out of them. [¶] . . . [¶] . . . So, Mr. Mabon, what I'm saying is that's what I'm basing this decision on."

On this record, there is no "reasonable chance" the trial court would have exercised its discretion to strike or reduce the enhancement based on defendant's age. (*People v. Hendrix* (2022) 13 Cal.5th 933, 944.) Indeed, "if the court finds that dismissal of an enhancement 'would endanger public safety' [citation], then it is difficult to imagine the circumstances under which dismissal would be 'in the furtherance of justice,' which the court must find in order to dismiss." (*People v. Mendoza, supra*, 88 Cal.App.5th at p. 296, fn. 4.) Accordingly, we decline to reverse the resentencing order on this ground.

### F. No Cumulative Error.

Lastly, defendant argues reversal is required because the trial court made multiple errors that were collectively prejudicial. We disagree. The cumulative error doctrine does not apply because there were very few errors and none that were prejudicial. Accordingly, reversal is not warranted. (See *People v. Henrique* (2017) 4 Cal.5th 1, 48 [" 'Defendant has demonstrated few errors, and we have found each error or possible error to be harmless when considered separately. Considering them together, we likewise conclude that their cumulative effect does not warrant reversal' "].)

### DISPOSITION

The judgment is affirmed.

Jackson, P. J.

WE CONCUR:

Simons, J.
Burns, J.

A165624/*People v. Troy Dominic Mabon*

24